INDUSTRIAL ACCIDENT BOARD ET AL V. O. E. GLENN ET AL.

No. A-439. Decided November 14, 1945.
Rehearing overruled December 29, 1945.
(190 S. W., 2d Series, 805.)

Mr. Chief Justice Alexander and Justices Sharp and Simpson dissenting.

*Grover Sellers,* Attorney General, *Geo. W. Barcus, David Wuntch,* and *Elton M. Hyder, Jr.,* Assistants Attorney General, for petitioner.

It was error for the Court of Civil Appeals to hold that the mandamus should issue to compel the Industrial Accident Board to approve the settlement agreement. Employers Indm. Corp. v. Woods, 243 S. W. 1085; Mingus v. Wadley, 115 Texas 551, 285 S. W. 1084; Commercial Casualty Ins. Co. v. Hilton, 126 Texas 497, 87 S. W. (2d) 1081.

*Powell, Wirtz, Rauhut & Gideon* of Austin, and *K. W. Gilmore,* of Houston, for respondents.

MR. JUSTICE SLATTON delivered the opinion of the Court.

O. E. Glenn and the compensation carrier, Petroleum Cas-

ualty Company (the insurer for the Humble Pipe Line Company) brought this action in the District Court of Travis County in the nature of a mandamus proceeding against the Industrial Accident Board. Glenn et al sought the writ of mandamus to compel the Industrial Accident Board to approve a compromise settlement agreement which had been entered into by O. E. Glenn, an employee of the Humble Pipe Line Company, and the Petroleum Casualty Company, the carrier of the pipe line company's compensation insurance. It was averred that Glenn received an arm injury on December 26, 1941, in the course of his employment, which resulted in a permanent partial disability to his forearm above the wrist or to his hand, estimated to be at from fifteen to twenty per cent. Thereafter Glenn and the insurance carrier entered into a settlement agreement which provided that for 12 3/7 weeks the claimant was entitled to receive $20.00 per week, agregating $248.28, and the parties subtracted the compensation already paid for 12 3/7 weeks as for total disability from 150 weeks, thus leaving 137 4/7 weeks of partial permanent disability. The parties averred that the average weekly wage of Glenn was $50.77 and that under Section 12 of Article 8306, by multiplying the maximum rate of $20.00 per week by 20% (which was the maximum percentage of partial permanent disability as estimated by the doctor), they arrived at the sum of $4.00 per week as compensation for the 137 4/7 weeks, aggregating a total of $550.28. It further appears that the Industrial Accident Board declined to approve the compromise settlement agreement for the following reasons only:

"You have not figured the amount of compensation due for the claimant's percentage of disability in accordance with the Board's rule, which is:

"Sixty per cent of the claimant's average weekly wage ($50.77 x 60% equals $30.46), multiplied by 17.5% being a split between 15% and 20% that the doctor gives as the claimant's remaining permanent partial disability, produces a compensation rate of $5.33 per week. 150 weeks to the hand less twelve weeks, previously paid for temporary total disability, leaves a remainder of 138 weeks. After discounting 138 weeks there remains 127 3/4 weeks to this specific member (hand) which multiplied by 17.5 per cent of sixty per cent of his average weekly wage $5.33 per week, amounts to $680.70.

"Should you be willing to raise the compromise settlement agreement to the above figure, the Board will be willing to approve it, otherwise, the Board has declined to approve it as presented."

The trial court ruled that it had not the right to compel the Industrial Accident Board through a writ of mandamus to approve a compromise settlement agreement entered into between a compensation carrier and a compensation claimant. The ruling was invoked by the Industrial Accident Board by a plea in abatement. Glenn et al appealed to the Austin Court of Civil Appeals, and the Court of Civil Appeals decided that the trial court had the right to compel by the writ of mandamus the approval of the compromise settlement agreement by the Industrial Accident Board. The Honorable Court of Civil Appeals further held that since Glenn and the insurance carrier had correctly computed the rate of compensation as provided in Section 12 of Article 8306, that the writ should issue in the district court as prayed for. 184 S. W. (2d) 302.

This court, in an opinion by the writer handed down on the 18th day of April, 1945, ruled that the Industrial Accident Board could not be compelled by a writ of mandamus to approve a compromise settlement agreement which had been entered into between a compensation claimant and a compensation carrier, and ruled that the Court of Civil Appeals had followed the prior opinions of the Supreme Court of Texas in approving the method used for computing compensation under the aforesaid section of the compensation law.

The Supreme Court, on July 18, 1945, in an opinion edited by Associate Justice Simpson, ruled that the method used by the Industrial Accident Board, under the undisputed facts as provided under the aforesaid section of the compensation law, had correctly calculated the compensation due by the insurance carrier to the compensation claimant, and reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the district court.

■ The cause is now pending in this court on motion for a rehearing. It is the opinion of the court that under appropriate provisions of Section 12 of Article 8307 that the Industrial Accident Board cannot be required by a writ of mandamus to approve a compromise settlement agreement between a compensation insurance claimant and an insurance carrier. The provision of Section 12 of Article 8307 reads:

"Where the liability of the association or the extent of the injury of the employee is uncertain, indefinite or incapable of being satisfactorily established, the Board may approve any compromise adjustment settlement or commutation thereof made between the parties."

It is readily seen from the wording of the statute that whether the board approves or disapproves a compromise settlement agreement is within the discretion of the board. The quoted statute says "the board *may* approve," as distinguished from the phrase "the board *shall* approve," thus indicating by clear and unmistakable language that under the statute the sound discretion of the board is required in determining whether it approves or disapproves such a settlement agreement. It is settled by the decisions of this court that mandamum will not issue to compel the performance of an act which involves the exercise of discretion or judgment. Beach et al v. McKay, 108 Texas 224, 191 S. W. 557.

The approval of such an agreement by the Industrial Accident Board is neither an award of compensation nor a denial thereof. Commercial Casualty Insurance Co. v. Hilton, 126 Texas, 497, 87 S. W. (2d) 1081. What is the effect of the board's action in refusing to approve a compromise settlement agreement? If the approval of such an agreement by the board is neither a grant of compensation nor a denial of an award for compensation, it necessarily follows, we think, that a disapproval of such an agreement cannot be given any greater force or effect. Therefore, under the facts appearing here the claim of Glenn for compensation upon the board's disapproval of the compromise settlement agreement remains pending in the Industrial Accident Board, and under such facts it is the established rule in this court that where the cause of action is derived from a statute and not from the common law, as is the case in a suit for workmen's compensation, the provisions of the statute must be complied with or an action is not maintainable in the courts. Mingus v. Wadley, 115 Texas 551, 285 S. W. 1084. What, then, are the rights of a compensation claimant and the compensation carrier under facts like these? Under appropriate provisions of the workmen's compensation act, either the claimant or the insurance carrier has the right to seek a final award on the claim filed by Glenn (which is still pending) and, being dissatisfied therewith, may appeal therefrom through compliance with the provisions of the workmen's compensation statutes to the courts.

■■ The jurisdiction of the courts in suits involving workmen's compensation is appellate in character, even though the trial in such cases is de novo. It must be shown, among other things, that the Industrial Accident Board has made a final award on a claim for compensation before the jurisdiction of the courts can be invoked. Talley v. Texas Employers Insurance Association, 48 S. W. (2d) 988; Petroleum Casualty Co. v. Webb, 127 Texas 91, 92 S. W. (2d) 236. It may be conceded, without de-

ciding, that the writ of mandamus is available to the parties in interest for the purpose of compelling the Industrial Accident Board to proceed to hear and determine a claim for compensation on the refusal of the board to act, but this is not the purpose of this suit. It is sought here to compel the board to act on a claim filed before it in a specific manner. In a word, the parties seek to control the discretion or judgment of the board and thereby avoid the necessity of procuring from the board a final award and an appeal therefrom. The equitable remedy of a writ of mandamus is not available as a substitute for a legal remedy provided by law. Navarro County v. Tullos, 237 S. W. 982, (writ refused). Thus it indisputably appears that the parties have not exhausted their rights before the Industrial Accident Board provided by the workmen's compensation act. There being no final award by the board on the claim for compensation filed by Glenn, the parties have not the right to invoke the jurisdiction of the district court until they have exhausted the rights given them by the workmen's compensation law.

This ruling necessarily approves the action of the trial court in sustaining the board's plea in abatement to the mandamus proceedings filed in the district court by Glenn and the insurance company, and requires a reversal of the judgment of the Court of Civil Appeals which holds to the contrary. This being true, our discussion of the proper interpretation of Section 12 of Article 8306 contained in the opinion dated April 18, 1945, and the opinion dated July 18, 1945, is not necessary to a decision of this cause, and is therefore dictum.

A majority of the court as it is now constituted is of the opinion that we should withdraw both former opinions of the court and substitute therefor this opinion.

Accordingly, the former opinions and orders of this court are withdrawn. The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court which sustained the plea in abatement is affirmed.

Opinion delivered November 14, 1945.

Associate Justice Taylor not sitting.

MR. JUSTICE SIMPSON, dissenting.

I conclude that under the facts averred the mandamus sought would lie. Associate Justice Blair of the Court of Civil Appeals developed this matter fully and ably in his opinion (184

S. W. (2d) 302), and since I am in accord with his conclusions on the point, I will not particularize about it.

But I cannot agree with the holding of the Court of Civil Appeals as to the maximum compensation payable under the circumstances obtaining here. In my opinion, the Industrial Accident Board's construction of the statute should have been upheld. Moreover, so much uncertainty is prevalent about how to construe this statute that I consider it urgent, even imperative, that we express our views so those interested will know what course to pursue. Even had I been in agreement with the conclusion that the mandamus would not lie, still I take the view that we are under a compelling duty to settle the existing uncertainty although our holding on the point would not be necessary to a determination of the case. Confronted by a like situation in Texas Midland R. R. Co. v. Byrd, 102 Texas 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, Chief Justice Gaines said:

"* * * In the view we take of the case it is not necessary that we should pass upon the assignment, but we consider the question of such importance as to make a ruling upon it appropriate."

The court proceeded to rule on the question, and subsequently when the ruling was assailed as dictum it was declared authoritative. Parker v. Bailey (Tex. Com. App.), 15 S. W. (2d) 1033. Also see Sutherland v. Friedenbloom (Tex. Civ. App.), 200 S. W. 1099 (writ refused); 11 Tex. Jur. 836. Accordingly, because of the imperative need of settling the uncertainties to which I have adverted and in harmony with applicable precedents, I shall undertake a construction of the statute under consideration.

The facts are adequately stated in the majority opinion.

The portion of the statute which concerns us here is the following language from Section 12 of Article 8306, Tex. Rev. Civ. Stat. 1925:

"* * * The compensation paid therefor shall be sixty per cent of the average weekly wages of the employee, but not to exceed $20.00 per week, multiplied by the percentage of incapacity caused by the injury for such period not exceeding three hundred weeks as the Board may determine. Whenever the weekly payments under this paragraph would be less than $3.00 per week, the period may be shortened, and the payments correspondingly increased by the Board."

The parties agree that Glenn's total compensation period would extend through only one hundred fifty weeks. But they disagree whether the basic maximum figure of $20.00 in the quoted passage relates to the compensation rate or to the wage rate. So the question narrows immediately to a determination of what is the antecedent of the $20.00 maximum, whether the *compensation* to be paid or *60% of the average weekly* wages upon which the compensation for partial incapacity is to be computed. The Industrial Accident Board takes the view that the $20.00 fixes the maximum weekly compensation, while the insurance carrier and Glenn insist that it fixes the maximum of 60% of the average weekly wages upon the basis of which compensation for a partial loss of the use of the hand is to be calculated.

In four other places in Article 8306, the maximum of $20.00 occurs. (Section 8, 10, 11, and the first subparagraph of Section 12.) In each of these other four instances the $20.00 maximum refers to the compensation payable and not the maximum wage upon which compensation is to be figured. In fixing these maximums, it is significant to observe that the Act follows largely the same pattern of sentence structure throughout. If we should agree with the contentions of Glenn and the compensation carrier, we would be obliged to ascribe one meaning to the language the first four times it is used and a different meaning to it when it occurs in the passage we are now considering, although phrased substantially in the same fashion as in the four previous instances.

This language was first construed by the Beaumont Court of Civil Appeals in 1921, when the court's interpretation was contrary to that urged by the Industrial Accident Board here. Western Indemnity Co. v. Milam (Tex. Civ. App.), 230 S. W. 825 (writ refused). In 1923 the El Paso Court of Civil Appeals reached a conclusion directly opposite to that announced by the Beaumont Court in the Milam case. Maryland Casualty Co. v. Ferguson (Tex. Civ. App.), 252 S. W. 854 (writ refused). Some three years later, the Ferguson case was expressly followed by the Beaumont Court in Dohman v. Texas Employers' Ins. Ass'n (Tex. Civ. App.), 285 S. W. 848 (no application for writ of error), where it was said of the method of computation applied: "This is the rule followed by the Industrial Accident Board, and the courts will follow the construction placed upon the act by the board, unless clearly wrong."

It is interesting to observe that in the opinion in the Dohman case, the Beaumont Court did not mention its previous in-

consistent holding in the Milam case although in the meantime it had followed the Milam case on one occasion. Millers Indemnity Underwriters v. Cahal (Tex. Civ. App.), 257 S. W. 957.

In 1928, the United States Circuit Court of Appeals for the Fifth Circuit followed the Ferguson and Dohman cases. After quoting the language of the Act which we are now considering, that court said:

"* * * What is forbidden by the quoted language to exceed $20 is the weekly compensation payable to the injured employee. That language does not indicate a purpose to require the sum of $20 to be substituted for the amount of 60 per cent. of the average weekly wages, where the amount actually exceeds $20." Maryland Casualty Co. v. Laughlin, 29 Fed. (2d) 343.

It has been urged that the language now before us is plain and unambiguous, construes itself, and consequently that there is no need or occasion for a judicial determination of what it menas. Such a position is thought quite unrealistic. If the provision under study were simple and unambiguous, manifestly so large a number of eminent jurists would not, as it reflected in the decisions, so frequently have differed about what it means. The confusion in the precedents coupled with a rationalization of what this statute was intended to mean argue mostly convincingly that the passage is both uncertain and ambiguous.

If it be agreed that the statute is uncertain and ambiguous, two well-settled rules guide us in construing it. First, the practical interpretation of the Act by the agency charged with the duty of administering it is entitled to the highest respect from the courts. And this is especially so when that interpretation has been long continued and uniform. Maryland Casualty Co. v. Ferguson, supra; Dohman v. Texas Employers' Ins. Ass'n, supra; 39 Tex. Jur. 235 et seq.; 42 Am. Jur. 392 et seq. Second, the Act is to be given a liberal construction in favor of the injured employee in order to give the relief intended and to effectuate the beneficient purposes of the legislation. Texas Employers' Ins. Ass'n v. Volek (Tex. Civ. App.), 44 S. W. (2d) 795 (affirmed, Tex. Com. App., 69 S. W. (2d) 33, certiorari denied 293 U. S. 598, 55 S. Ct. 116, 79 L. Ed. 691; 45 Tex. Jur. 363 et seq.

The undisputed evidence shows that the Industrial Accident Board, which is charged by statute with the duty of administering the Workmen's Compensation Act, has uniformly followed the construction it urges here since 1918, which dates back prac-

tically to the first workings of the Act. Under the circumstances, this long-continued and uniform interpretation of the statute should be accorded the highest respect and should not be rejected unless for compelling reasons,—reasons which in no sense obtain here.

Moreover, the interpretation urged by the Board harmonizes with the other rule to which I have adverted,—the rule requiring that the Act be construed liberally in favor of the injured employee.

Upon the considerations I have presented, I am impelled to agree with the construction of this statute which is urged by the Industrial Accident Board. .

In deciding this cause, the Court of Civil Appeals took the view that the case of Fidelity Union Casualty Co. v. Munday (Tex. Com. App.), 44 S. W. (2d) 926, compelled a different conclusion. I do not so regard it. In that case, the Fidelity Union Casualty Company was urging that proof of economic incapacity, i. e., impairment of earning capacity, as distinguished from physical disability, was necessary to a recovery for "a temporary total loss of the use of a hand, or a permanent partial loss of the use of that member." But the court, in holding that the injury was compensable under that part of Section 12 which is quoted in its opinion rather than under other provisions of the Act, rejected that contention and held in effect that proof of physical disability was sufficient. In stating that "in conference with the Supreme Court, we have been authorized to declare all holdings to the contrary, in other cases, overruled," the Commission of Appeals was referring to cases which had held that injuries such as that involved in the Munday case were not compensable under Section 12. See, for example, Texas Employers' Ins. Assn'n v. Price (Tex. Civ. App.), 300 S. W. 667 (writ dismissed 117 Texas 173, 300 S. W. 672).

A misunderstanding of the holding in the Munday case arose, as I appraise it, from this situation: The trial court had allowed Munday $20.00 a week for 15 weeks of temporary total loss of the use of his hand and $15.00 a week for 135 weeks of 75% loss of the use of the same hand. The Court of Civil Appeals reformed the judgment to allow recovery of $15.00 for 150 weeks. 26 S. W. (2d) 676. Now in fact, 60% of Munday's average weekly wages exceeded $20.00. Counsel for both Munday and the Fidelity Union Casualty Company proceeded erroneously upon the assumption that $20.00 was the correct basic figure of which 75% should be taken in arriving at Munday's compensation for

the partial loss of the use of his hand. The court was not asked to say what the correct basic figure was, the arguments of the parties on file in the case do not raise the point, and it was not in any sense up for decision. Accordingly, the Munday case is not authority for the correctness of the construction of the statute urged by Glenn and the compensation carrier here.

The argument is advanced that under the Industrial Accident Board's construction, two employees working side by side, with average weekly wages of $75.00 each, might be injured in the same accident, one losing a hand entirely and the other suffering only a 45% incapacity to his hand, yet both would be compensated at the same rate. This is true, not because of any misinterpretation of the statute, but because the Act prescribes certain maximums of compensation above which payment will not be awarded no matter how high the wages go. Illustrative of this situation, let us suppose the same two workmen, each with an average weekly wage of $75.00, are injured in the same accident, one suffering a 50% and the other a 75% permanent partial incapacity. The weekly compensation of each shall be equal, under Section 11 of the Act to "sixty per cent of the difference between his average weekly wage before the injury and his weekly wage earning capacity during the existence of such partial incapacity, but in no case more than $20.00 per week." The difference between the weekly wages of the first workman before the injury and afterwards is $37.50; in the case of the second workman, the difference is $56.25. Sixty per cent of each figure produces an amount in excess of $20.00, so under the Act both receive the same compensation, the $20.00 weekly maximum, although one is injured 50% more than the other. Associated Indemnity Corp. v. McGrew, 138 Texas 583, 160 S. W. (2d) 912. Like illustrations might be drawn from the situation of two workmen totally and permanently incapacitated, one with a $50.00 and the other with a $100.00 average weekly wage. Both would receive the same compensation, the $20.00 weekly maximum for 401 weeks, although at the time of the accident one was making twice the wages of the other. Section 10, Article 8306.

Conformably to what has been said, I conclude the Industrial Accident Board's interpretation of the provisions of the statute under consideration is correct and should be sustained.

Opinion delivered November 14, 1945.

Chief Justice Alexander and Associate Justice Sharp concurring.