Chris **PARADISSIS**, Petitioner,

v.

**ROYAL INDEMNITY COMPANY,**
Respondent.

No. B–4108.

Supreme Court of Texas.

Jan. 23, 1974.

Rehearing Denied April 24, 1974.

Wandel & Bousquet, R. D. McPherson, Houston, for petitioner.

Fulbright, Crooker & Jaworski, Sam H. Hood, Jr., Martin D. Beirne and Russell H. McMains, Houston, for respondent.

DANIEL, Justice.

This suit is for damages for personal injuries of an employee resulting from an alleged common law tort committed by a workmen's compensation carrier. The trial court action of dismissal for want of jurisdiction was affirmed by the Court of Civil Appeals. 496 S.W.2d 146. We affirm.

On June 6, 1962, Chris Paradissis, plaintiff in the trial court and appealing party in both the Court of Civil Appeals and this Court, received back injuries in the course of his employment by Rainbo Baking Co. On January 20, 1965, the Industrial Accident Board found Paradissis to be totally and permanently disabled as a result of his injuries. The final award was fully paid by Royal Indemnity Company, Rainbo's workmen's compensation carrier and defendant in this action. Royal Indemnity also paid certain costs of continuing medical care for Paradissis.

The record before the Industrial Accident Board, which was considered by the trial court, reveals that on December 27, 1971, Paradissis, hereinafter referred to as plaintiff, alleged by letter from his attorney to the Board that Royal Indemnity Company refused to reimburse his family for nursing services, refused to pay other medical expenses, and refused to furnish medical attention recommended by treating physicians. The letter stated, "We herewith make claim against them [Royal Indemnity] for all such expenses, debts, and medical care needed but not furnished." It also asked for a change in treating physi-

cians, for an immediate conference, and a Board hearing if "the problems cannot be resolved amicably at such conference." Again on January 24, 1972, plaintiff requested a conference with the Board. On January 26, 1972, the manager of Royal Indemnity wrote the Board that to the best of his knowledge all medical payments had been paid but that the case "does, however, have complexities, including request for psychiatric treatment." He further stated that the company felt the interests of Mr. Paradissis would be best served by the suggested conference. On January 26, 1972, and February 11, 1972, Chris Paradissis' attorney wrote the Industrial Accident Board requesting it to take no further action. Without a hearing or any further proceeding before the Board, plaintiff filed this suit in District Court against Royal Indemnity on February 15, 1972.

Plaintiff alleged that, pursuant to a contract of workmen's compensation entered into between his employer and Royal Indemnity, the latter became liable to him for certain medical care, nursing services and hospital benefits which it had failed and refused to furnish; that both a neurosurgeon and an orthopedic surgeon chosen by Royal Indemnity advised the company as early as 1966, that in addition to his back injury plaintiff was suffering from psychoneurosis and that he should be treated by a psychiatrist; that from 1967 to 1971, Royal Indemnity negligently refused and failed to provide such psychiatric services, insisting instead that plaintiff be treated only by the orthopedic surgeon of its choice; that he was not informed by the company or the surgeon of the need for psychiatric services until 1971; that if his psychoneurosis had been properly and timely treated when known to the company in 1966, he would have recovered and again become gainfully employed; that because of the delay and failure of Royal Indemnity to furnish necessary psychiatric treatment as required under its contract, "his course of treatment will be longer, and that his prognosis is most guarded, and it is most probable that he will never again

be able to return to . . . remunerative employment . . ."

We granted plaintiff's writ in order to give further consideration to the effect of his additional specific allegation that Royal Indemnity concealed his true condition from him, and his argument that this amounted to an independent common law tort from which he suffered new and independent injuries. There have been exceptional cases in other jurisdictions in which fraud on the part of the employer and intentional torts such as assault and battery or intentional infliction of emotional distress on the part of the insurer have been held to constitute separate common law actions beyond the scope of Workmen's Compensation Acts. See Unruh v. Truck Insurance Exchange, 7 Cal.3d 616, 102 Cal. Rptr. 815, 498 P.2d 1063 (1972); Ramey v. General Petroleum Corp., 173 Cal.App.2d 386, 343 P.2d 787 (1959); and Redner v. Workmen's Comp. Appeals Bd., 5 Cal.3d 83, 95 Cal.Rptr. 447, 485 P.2d 799 (1972). However, a careful study of plaintiff's pleadings in the present case makes it unnecessary for us to pass upon the effect of similar torts in this State. Plaintiff has pitched his case solely upon alleged negligence of Royal Indemnity in failing to furnish proper medical services. He has no allegation of fraud or intentional infliction of a separate tort not arising from the original compensable injury or treatment thereof by Royal Indemnity in its status as an insurer. All of his alleged acts on the part of Royal Indemnity, including that of concealment, are cast in terms of negligence or gross negligence.

■ Clearly, under the laws and decisions of this State, as well as those of jurisdictions which have permitted common law actions against the workmen's compensation insurance carrier for willful torts, negligence of the carrier in providing or failing to provide medical services for treatment of a compensable injury or an aggravation thereof is covered by and compensable exclusively under the workmen's compensation laws. See Lotspeich

v. Chance Vought Aircraft, 369 S.W.2d 705 (Tex.Civ.App.1963, writ ref. n. r. e.); Martin v. Consolidated Casualty Ins. Co., 138 F.2d 896 (5th Cir. 1943); Unruh v. Truck Insurance Exchange, *supra*; 93 A.L.R.2d 598.

■ The opinion of the Court of Civil Appeals accurately traces the purposes and legislative history of the Texas Workmen's Compensation Act, Articles 8306 et seq.[1] It is intended to and does provide an exclusive system governing compensation to employees for injuries arising from their employment. Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S.W.2d 675 (1938). In providing the worker a form of prompt remuneration for loss of earning capacity, the statutory scheme is in lieu of common law liability based on negligence. In taking away from the subscribing employer certain defenses and relieving the employee of the burden of proof of negligence, it was provided that these benefits are made available in derogation of the employee's rights at common law. Thus, a subscribing employer and his insurer are exempt from common law liability on account of injuries arising out of the course of such employment, except for certain exemplary damages in death cases specifically provided for by the Act. Article 8306, Sections 1, 3, 3a, 4.

The system is nevertheless voluntary and elective upon the decision of both the employer and employee. Art. 8306, Sec. 3a; Art. 8308, Sec. 7. When the employee and employer have elected to participate under the Workmen's Compensation Law, they have voluntarily agreed that the rights and remedies otherwise existing under the common law shall not be operative, and that their respective rights shall be governed by the provisions of the compensation law.

■ All duties and liabilities alleged by plaintiff to be due him by Royal Indemnity necessarily arise from the Act and the workmen's compensation insurance con-

tract made pursuant thereto. His suit was properly dismissed because he has not pursued his claim for additional medical services through the Board before seeking relief in the District Court. Industrial Accident Board v. Glenn, 144 Tex. 378, 190 S.W.2d 805 (1945), held as follows:

"The jurisdiction of the courts in suits involving workmen's compensation is appellate in character, even though the trial in such cases is de novo. It must be shown, among other things, that the Industrial Accident Board has made a final award on a claim for compensation before the jurisdiction of the courts can be invoked."

The requirement that plaintiff seek relief through the Board did not leave him without remedy. He had previously received compensation for total and permanent disability due to the back injury received in the course of his employment, as well as remedial surgery and certain other medical services. He had the right under the law to obtain copies of all medical reports which had been furnished to the insurer. If he was dissatisfied with the results of treatment furnished, he had a remedy under Article 8306, Section 7, which provides:

"If the association fails to so furnish reasonable medical aid, hospital services, nursing, chiropractic services and medicines as and when needed after notice of the injury to the association or subscriber, the injured employee may provide said medical aid, nursing, hospital services, chiropractic services, and medicines at the cost and expense of the association."

There being a dispute as to his required medical needs, Section 7a of Article 8306 provides the following remedies:

"If it be shown that the association is furnishing medical aid, hospital services, chiropractic services, and medicines provided for by Section 7 hereof in such

---

1. All citations of Articles refer to Vernon's Annotated Civil Statutes.

manner that there is reasonable ground for believing that the life, health or recovery of the employee is being endangered or impaired thereby, the Board may order a change in the physician, chiropractor or other requirements of said section. If the association fails promptly to comply with such order after receiving it, the Board may permit the employee or some one for him to provide the same at the expense of the association under such reasonable regulations as may be provided by said board."

In fact, Section 5 of Article 8307 gives the Board continuing jurisdiction in this case to "render successive awards to determine the liability of the association for the cost or expense" of medical services furnished to and received by plaintiff until the insurer "shall have fully discharged its obligation under this law to furnish all such medical aid, hospital services, nursing, . . . [etc.] . . . to which said employee may be entitled," subject to the procedures set forth therein.

The judgment of the Court of Civil Appeals is affirmed.