**PACIFIC INDEMNITY INSURANCE COMPANY, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY and Vidal Lopez, Appellees.**

No. 3–91–335–CV.

Court of Appeals of Texas, Austin.

July 1, 1992.

Michael J. Donovan, Harris & Harris, Austin, for appellant.

J. Hampton Skelton, Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

CARROLL, Chief Justice.

Pacific Indemnity Insurance paid workers' compensation benefits to Vidal Lopez, an injured worker, and then sued Liberty Mutual Insurance in district court for reimbursement without first seeking relief from the Industrial Accident Board (IAB or Board). Because Pacific Indemnity failed to exhaust its administrative remedies before filing its lawsuit, we hold that the trial court correctly granted summary judgment in favor of Liberty Mutual.

BACKGROUND

Lopez suffered an on-the-job back injury in 1984 while working for Pure Castings Company. He was treated for lumbar strain and returned to work after a few days. His job at Pure Castings Company required lifting and standing for long peri-

ods of time, and his back condition worsened until he became totally disabled in November 1988. In February 1989, Dr. Pedro Quiroga diagnosed Lopez as having a repetitious-trauma injury and concluded that Lopez had re-injured his back in 1988. Lopez underwent back surgery in November 1990.

Pacific Indemnity was the workers' compensation carrier for Pure Castings Company at the time of the initial injury in 1984. Liberty Mutual replaced Pacific Indemnity as Pure Castings's carrier on April 11, 1988. When notified of Lopez's condition in January 1989, Pacific Indemnity initiated disability and medical-expense benefits because it was unclear at that time whether Lopez was suffering continued effects from the 1984 injury or had reinjured himself late in 1988. In February 1989, after learning of Dr. Quiroga's diagnosis, Pacific Indemnity requested Liberty Mutual to assume compensation payments to Lopez and reimburse Pacific Indemnity for payments made up to that date. Liberty Mutual did neither, and Pacific Indemnity voluntarily continued to pay all of Lopez's disability and medical benefits until September 1990.

Lopez filed claims with the IAB against Pacific Indemnity and Liberty Mutual in January 1989. In August 1990, the IAB issued two orders: it ordered Pacific Indemnity to pay all reasonable and necessary medical bills attendant to the 1984 injury, and ordered Liberty Mutual to pay sums relating to the 1988 injury. The orders did not outline the expenses owed by each insurer, nor did they direct Liberty Mutual to reimburse Pacific Indemnity for monies already paid to Lopez.

On several occasions, Pacific Indemnity again asked Liberty Mutual to assume benefit payments to Lopez and to reimburse Pacific Indemnity for expenses paid to Lopez since November 1988. Liberty Mutual settled with Lopez but refused to reimburse Pacific Indemnity. In September 1990, Pacific Indemnity stopped paying benefits to Lopez. The following month, Pacific Indemnity filed suit in district court against Liberty Mutual and Lopez for unjust enrichment, fraud, and violations of the Texas Insurance Code.

Liberty Mutual filed a motion for summary judgment, alleging that Pacific Indemnity failed to exhaust its administrative remedies and that Pacific Indemnity's other claims fail as a matter of law. The trial court granted the motion without specifying the grounds and Pacific Indemnity now appeals.

## DISCUSSION

█ In its first point of error, Pacific Indemnity argues that the district court erred in granting Liberty Mutual's motion for summary judgment on the basis that Pacific Indemnity failed to exhaust administrative remedies. Liberty Mutual and Lopez rejoin that this suit is barred as a matter of law because Pacific Indemnity did not present its reimbursement claim to the IAB and obtain a final award before appealing to the district court. We agree.

The workers' compensation law directs that all claims arising under the law must first be adjudicated at the agency level: "All questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the Board." 1977 Tex.Gen.Laws, ch. 412, § 1, at 1113 (Tex. Rev.Civ.Stat.Ann. art. 8307, § 5, since repealed) (current version at Tex.Rev.Civ. Stat.Ann. art. 8308-6.61-.64 (Supp.1992)).[1]

█ The IAB has exclusive jurisdiction to hear and determine claims arising under the workers' compensation law. *See id.* Although a party who is dissatisfied with an IAB award may obtain a trial *de novo* in the district court, the party must pursue its administrative remedy first, since trial-court jurisdiction attaches only by way of

1. Enactment of the Texas Workers' Compensation Act in late 1989 substantially changed the Texas workers' compensation laws. *See* 1989 Tex.Gen.Laws, 2nd C.S., ch. 1, § 1.01–17.19, at 1–122 (Tex.Rev.Civ.Stat.Ann. art. 8308–1.01– 8309–1 (Supp.1992)). Because the new Act took effect January 1, 1991, and Pacific Indemnity filed this lawsuit October 19, 1990, the former workers' compensation provisions govern the disposition of this cause.

appeal from an IAB decision. *See Johnson v. American Gen. Ins. Co.*, 464 S.W.2d 83, 84 (Tex.1971). A party's failure to obtain an IAB ruling on an issue arising under the workers' compensation statute prevents the party from invoking the jurisdiction of the district court to later decide the issue. *Paradissis v. Royal Indem. Co.*, 496 S.W.2d 146, 150 (Tex.Civ.App.1973), *aff'd*, 507 S.W.2d 526 (Tex.1974).

Pacific Indemnity contends that it was not required to present its reimbursement claim to the IAB before suing Liberty Mutual and Lopez in district court for two reasons: (1) Pacific Indemnity is not an interested party within the meaning of the workers' compensation law and (2) this dispute does not "arise under" the compensation law because the law does not specifically address this reimbursement issue.

First, we cannot agree that Pacific Indemnity is not an interested party. Although article 8307, section 5 does not define the term "interested party," the facts speak for themselves. Pacific Indemnity was the insurance carrier for Pure Castings at the time of Lopez's 1984 injury and this entire dispute turns on whether Lopez aggravated the 1984 injury or reinjured himself in 1988. In August 1990, the IAB resolved the matter and issued an order directing Pacific Indemnity to pay the medical bills relating to Lopez's 1984 injury.

Moreover, Pacific Indemnity raised this exact reimbursement claim in two notices of controversion filed with the IAB before Pacific Indemnity initiated the present lawsuit. The notices, filed on November 15, 1989, and April 5, 1990, both requested that Liberty Mutual assume benefit payments to Lopez and reimburse Pacific Indemnity for expenses paid to Lopez since November 1988. Finally, we note that in August 1990, Pacific Indemnity wrote a letter to the IAB discussing dissatisfaction with Lopez's compensation award. This letter shows clearly that this is a workers' compensation dispute and that Pacific Indemnity was a party.

We believe any definition of an "interested party" would include Pacific Indemnity.

The fact that this cause involves one insurance carrier's reimbursement claim against another carrier does not alter the fact that Pacific Indemnity is an interested party within the meaning of article 8307, section 5.

We next review whether this dispute "arises under" the workers' compensation law. Pacific Indemnity argues that the compensation statutes in existence at the time this controversy began did not specifically state the right of the IAB to resolve carrier disputes and render orders regarding the same. However, this dispute arose because Pacific Indemnity voluntarily paid a claim it believed it did not owe and now seeks reimbursement from Liberty Mutual. The workers' compensation statutes offered Pacific Indemnity an alternative course of action.

The workers' compensation law provides that within twenty days after a carrier receives a claimant's written notice of injury, the carrier must either initiate compensation payments or file a statement of controversion with the IAB. 1983 Tex.Gen. Laws, ch. 989, § 1, at 5379 (Tex.Rev.Civ. Stat.Ann. art. 8306, § 18a(a), since repealed) (current version at Tex.Rev.Civ. Stat.Ann. art. 8308–5.21–.23 (Supp.1992)). Once the carrier files a statement of controversion, the Board must set the matter for a prehearing conference on the merits. *Id.* Thus, Pacific Indemnity had a forum for clarifying its obligations to Lopez.

Pacific Indemnity indicates that it began disability and medical-expense benefits because it was initially unclear whether Lopez was suffering continued effects from the 1984 injury. Once Pacific Indemnity learned in February 1989 that Lopez had re-injured himself in 1988, Pacific Indemnity's remedy was to suspend or stop payments of Lopez's benefits and file a statement with the IAB within ten days stating the reasons for suspending payment. *Id.* § 18a(b). Pacific Indemnity could have invoked this procedure to force Liberty Mutual to assume benefit payments to Lopez.

Finally, we note that if a carrier does not consent to abide by a final IAB ruling, it may appeal the ruling by notifying the

Board within twenty days of the award. The carrier must then file suit in district court within twenty days of giving notice. 1977 Tex.Gen.Laws, ch. 412, § 1, at 1113 (Tex.Rev.Civ.Stat.Ann. art. 8307, § 5, since repealed) (current version at Tex.Rev.Civ. Stat.Ann. art. 8308-6.61-.64 (Supp.1992)). The carrier then receives a trial *de novo* in district court. *Id.; see Johnson,* 464 S.W.2d at 84. The present cause is not an appeal from the IAB ruling and the record contains no evidence that Pacific Indemnity attempted such an appeal.

Because the workers' compensation statute provides a mechanism for resolving Pacific Indemnity's exact dispute, we conclude that Pacific Indemnity's claim "arises under" the workers' compensation law. Accordingly, the IAB must rule on Pacific Indemnity's reimbursement claim before Pacific Indemnity is entitled to file a lawsuit.

Pacific Indemnity twice filed notices of controversion with the IAB, requesting a determination that Liberty Mutual must reimburse Pacific Indemnity for all monies paid to Lopez after November 1988. Pacific Indemnity apparently never obtained an IAB hearing on the reimbursement issue, however, and failed to pursue that claim within the administrative agency. The record does not reveal why Pacific Indemnity abandoned the agency process in favor of a lawsuit, but having dropped its efforts to resolve this claim at the administrative agency, Pacific Indemnity waived its right to bring this suit.

## CONCLUSION

Pacific Indemnity's failure to exhaust its administrative remedies bars this suit as a matter of law and requires that we affirm the trial court's granting of summary judgment. Because we conclude that the trial court has no jurisdiction to hear this suit, we overrule this first point of error. We need not review Pacific Indemnity's remaining points of error. The trial-court judgment is affirmed.