Scott Randall ANKROM, Appellant,

v.

DALLAS COWBOYS FOOTBALL CLUB, LTD., Intervenor, Appellee.

No. 05–93–01896–CV.

Court of Appeals of Texas, Dallas.

March 23, 1995.

John E. Collins, Stephen Cormac Carlin, Weil Gotshal & Manges, Dallas, for appellant.

Darrell G. Anderson, Harvey G. Joseph, Godwin & Carlton, P.C., Dallas, for appellee.

Before THOMAS [1], C.J., and OVARD and WHITTINGTON, JJ.

## OPINION

THOMAS, Chief Justice.

This is a dispute between Scott Randall Ankrom and his former employer, the Dallas Cowboys Football Club, Ltd. (the Club). The dispositive issue is whether an employer is required to file a claim for credits or offsets with the Texas Worker's Compensation Commission (the Commission) before it may recover such sums in an appeal from a worker's compensation award. We conclude that it must. Because the Club did not file its claim for reimbursement with the Commission, we hold that the trial court lacked jurisdiction to enter an award in the Club's favor. Accordingly, we vacate the trial court's judgment and dismiss the Club's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Ankrom was employed as a professional football player with the Club. He injured his left knee during a preseason exhibition game in 1989. The knee injury required three surgeries. Thereafter, Ankrom underwent extensive rehabilitation treatment. Ankrom was placed on and off injured reserve during the 1989 season. He did not play any regular season games during the 1990 season. Ankrom left professional football before the 1991 season began.

In August 1991, following his departure from the Club, Ankrom filed a worker's compensation claim with the Commission.[2] In December 1992, the Commission issued a final award in Ankrom's favor. Gulf Insurance Company, the Club's worker's compensation carrier,[3] appealed the Commission's

---

1. The Honorable Linda Thomas was a member of the panel at the time this cause was submitted for decision. Justice Thomas was sworn in as Chief Justice on January 1, 1995.

2. The Texas Industrial Accident Board was renamed the Texas Worker's Compensation Commission effective April 1, 1990. See Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 17.01, 1989, Tex.Gen.Laws 1, 115, repealed by Act of May 12, 1993, 73rd Leg., R.S., ch. 269,

§ 5(2), 1993 Tex.Gen.Laws 987, 1273. Because this claim was filed in 1991, it was handled before the Commission.

3. The Club had a "retro" policy with Gulf. Under that policy, the Club was required to reimburse Gulf for all indemnity benefits, medical benefits, attorney's fees, and expenses that Gulf had to pay as a result of a worker's compensation claim.

award to the district court. The Club intervened, claiming a contractual right to recover any benefits that were to be paid to Ankrom. Thereafter, Ankrom and Gulf settled the worker's compensation claim for $26,500. The settlement amount was paid into the registry of the court pending final determination of the Club's claims.

Ankrom and the Club entered into a written set of stipulated facts and proceeded to a trial before the court. Based upon the evidence presented and the stipulated facts, the trial court awarded the entire worker's compensation award to the Club and ordered Ankrom to pay attorneys' fees. The trial court filed findings of fact and conclusions of law. Ankrom appeals the trial court's judgment.

## NECESSITY FOR THE CLUB TO EXHAUST ADMINISTRATIVE REMEDIES

In the first four points of error, Ankrom challenges the trial court's jurisdiction to enter an award in favor of the Club. Ankrom argues the trial court did not have jurisdiction to consider the claim because the Club failed to exhaust its administrative remedies under the worker's compensation act prior to seeking reimbursement in the district court.

The Club responds that its claims are in the nature of a breach of contract or declaratory judgment action, not a worker's compensation suit. Thus, the Club argues that it was not required to exhaust any administrative remedies prior to obtaining a recovery in court. The Club further asserts that it was not required, as an employer, to exhaust its administrative remedies prior to intervening in the trial court. The Club contends that, as a general rule, employers are not allowed to become involved in proceedings before the Commission. Therefore, the Club argues that its failure to participate in proceedings before the Commission did not deprive the trial court of jurisdiction.

### 1. Applicable Law

■ Article 8307, section 5 of the Texas Revised Civil Statutes requires all questions arising under the worker's compensation law to be first determined by the Industrial Accident Board (now the Commission) unless otherwise settled by agreement of the parties interested therein.[4] Based on this provision, Texas cases have long held that trial courts do not have original jurisdiction over claims and disputes arising out of on-the-job injuries. *See Employers' Indem. Corp. v. Woods,* 243 S.W. 1085, 1087 (Tex.Comm'n App.1922); *Starnes v. Texas Employers' Ins. Ass'n,* 549 S.W.2d 46, 47 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Thus, a party must pursue its administrative remedy first at the agency level, before seeking relief in the district court. *See Johnson v. American Gen. Ins. Co.,* 464 S.W.2d 83, 84 (Tex.1971). A party's failure to obtain an administrative ruling on an issue arising under the worker's compensation statute prevents the party from later invoking the jurisdiction of the district court to resolve the issue. *See Paradissis v. Royal Indem. Co.,* 496 S.W.2d 146, 150 (Tex.Civ.App.—Houston [14th Dist.] 1973), *aff'd,* 507 S.W.2d 526 (Tex.1974); *Pacific Indem. Ins. Co. v. Liberty Mut. Ins. Co.,* 834 S.W.2d 91, 93 (Tex.App.—Austin 1992, no writ). The jurisdiction of the district court over worker's compensation suits is appellate in nature, even though the trial in such cases is de novo. *Paradissis,* 507 S.W.2d at 529 (quoting *Industrial Accident Bd. v. Glenn,* 144 Tex. 378, 190 S.W.2d 805, 807 (1945)).

■ The worker's compensation system is voluntary and elective. *See Paradissis,* 507 S.W.2d at 529. When the employee and employer elect to participate under the system, they voluntarily agree that their rights and remedies otherwise existing under the common law will not be operative, and that their respective rights shall be governed by

---

4. Act of June 15, 1977, 65th Leg., R.S., ch. 412, § 1, 1977 Tex.Gen.Laws 1113, 1113 (Tex.Rev.Civ.Stat.Ann. art. 8307, § 5), *repealed by* Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex.Gen.Laws 1, 114. The citations in this opinion will be to the version of the statute in effect at the time of

Ankrom's injury which was August 1989. *See Harris v. Varo, Inc.,* 814 S.W.2d 520 (Tex.App.— Dallas 1991, no writ) (provisions of worker's compensation act in effect at time of injury determine rights and duties of the parties).

the provisions of the worker's compensation law. *Paradissis,* 507 S.W.2d at 529. Any duties and liabilities that necessarily arise from the worker's compensation statute and the worker's compensation insurance contract made pursuant thereto must be addressed first by the Industrial Accident Board (or Commission) before relief may be sought in the district court. *Paradissis,* 507 S.W.2d at 529.[5]

■ When the worker's compensation statute directs that action be taken in a certain way, it may be performed in no other manner. *See Truck Ins. Exch. v. Seelbach,* 161 Tex. 250, 339 S.W.2d 521, 523 (1960). The provisions of the statute with respect to the successive steps in the progress and maturity of a claim are mandatory, and the provisions of the statute must be complied with or an action is not maintainable in the courts. *See Sanchez v. Aetna Casualty & Sur. Co.,* 543 S.W.2d 888, 889 (Tex.Civ. App.—San Antonio 1976, writ ref'd n.r.e.); *Castillo v. Allied Ins. Co.,* 537 S.W.2d 486, 487 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).

Article 8309, section 4(b) provides a mechanism for employers to obtain credits or offsets for advance benefits payments made by the employer to an employee.[6] Section 4(b) states, in relevant part, that:

> [i]n the event the [insurance carrier] does not initiate payments of compensation, the employer may for the purpose of this Section voluntarily initiate weekly payments as they accrue to the employee ... for a period not to exceed ten (10) weeks or until the settlement is approved or the award made by the Board, whichever occurs first. *The employer shall notify the Board and association on forms supplied by the Board of the date of the initiation of such payments and the weekly amount thereof. At the time of any settlement,*

*award or judgment for compensation, such payment previously made by the employer ... during [a time in] which the employee earned no wages from the employer, shall be construed as employer compensation under this law and such payments of employer compensation shall be paid by the association directly to the employer.*

(Emphasis added.)[7] Thus, under this section, if an employer wants to obtain reimbursement for advance payments of worker's compensation benefits, the employer must notify the Commission of the amount of advance payments made.

### 2. Application of Law to Facts

■ It is undisputed that the Club did not file its claim for credits or offsets of advance payments with the Commission. Instead, the Club waited to assert its right of reimbursement until Ankrom's worker's compensation award was on appeal in the district court. We conclude that the Club's failure to pursue its right to a credit or offset before the Commission deprived the district court of jurisdiction to consider the Club's claim.

Our research reveals no Texas cases directly addressing whether an employer may pursue its claim for credits or offsets in the district court without first presenting that claim to the Commission. Nevertheless, we conclude that such a procedure is improper based on longstanding worker's compensation principles. As noted above, the provisions of the statute with respect to the successive steps in the progress and maturity of a claim are mandatory, and the statutory provisions must be complied with or an action is not maintainable in the courts of this State. *See Sanchez,* 543 S.W.2d at 889; *Castillo,* 537 S.W.2d at 487. Thus, when the worker's compensation statute provides that action be taken in a particular manner, it

---

5. Indeed, it has been noted that the relationship between an employee, employer, and insurer is contractual and the provisions of the worker's compensation statute existing at the time of the issuance of the worker's compensation policy are to be considered part of the employee/employer contract. *See Traders' & General Ins. Co. v. Powell,* 65 S.W.2d 269, 270 (Tex.Comm'n App.1933, holding approved).

6. Act of March 6, 1969, 61st Leg., R.S., ch. 18, § 11, 1969 Tex.Gen.Laws 48, 53 (Tex.Rev.Civ.Stat.Ann. art. 8309, § 4(b)), *repealed by* Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(15), 1989 Tex.Gen.Laws 1, 115.

7. Act of March 6, 1969, 61st Leg., R.S., ch. 18, § 11, 1969 Tex.Gen.Laws 48, 53 (repealed).

may be performed in no other way. *See Seelbach*, 339 S.W.2d at 523.

Here, the statute outlines a procedure for employers to obtain reimbursement for advance worker's compensation payments made to an employee. Under that procedure, an employer must notify the Commission of the date the advance payments were initiated and the weekly amounts thereof.[8] The provision indicates that, once this is done, any repayment of funds will be made by the association (*i.e.*, the insurance company) *directly* to the employer at the time of the worker's compensation settlement or award.[9] Because the statute states that an employer *shall* notify the Commission of any claim for reimbursement, we conclude this "action [has to] be taken in a particular manner" and that such action may be performed "in no other way." *See Seelbach*, 339 S.W.2d at 523. The Club failed to comply with the procedures outlined in the statute and it, therefore, was precluded from maintaining its action in district court.[10]

We find support for our conclusion in a recent decision by the Austin Court of Appeals. *See Pacific Indem. Ins. Co. v. Liberty Mut. Ins. Co.*, 834 S.W.2d 91 (Tex.App.—Austin 1992, no writ). In *Pacific Indemnity*, an employee of Pure Castings Company injured his back while on the job. At the time of the injury, Pure Castings had a worker's compensation insurance policy with Pacific Indemnity. A few years later, the employee again injured his back. Although at the time of the second injury Pacific Indemnity had been replaced by Liberty Mutual, Pacific Indemnity nevertheless initiated payments to the injured employee because it was unclear whether the second injury was simply a continuation of the first injury or was in fact a "re-injury." Later, when a physician diagnosed the employee's injury as a "re-injury,"

Pacific Indemnity sought reimbursement from Liberty Mutual for the funds previously paid. Liberty Mutual refused Pacific Indemnity's request, and Pacific Indemnity filed suit in district court.

The district court granted Liberty Mutual's motion for summary judgment, concluding Pacific Indemnity was not entitled to relief because it failed to exhaust its administrative remedies. The Austin Court of Appeals affirmed. *Pacific Indem.*, 834 S.W.2d at 92. In reaching its decision, the court noted that, under article 8307, section 5, a party must obtain an administrative ruling on a claim "arising under the worker's compensation statute" before it could take its claim to district court. *Pacific Indem.*, 834 S.W.2d at 92–93. The court concluded that Pacific Indemnity's dispute with Liberty Mutual "arose out of" the worker's compensation statute because the statute provided Pacific Indemnity with a mechanism for resolving its dispute with Liberty Mutual, *i.e.*, by filing a statement of controversion with the Industrial Accident Board. *Pacific Indem.*, 834 S.W.2d at 93–94. Because Pacific Indemnity failed to make use of the procedures outlined in the statute, the court concluded it had not exhausted its administrative remedies and the district court was therefore without jurisdiction to consider Pacific Indemnity's reimbursement claim. *Pacific Indem.*, 834 S.W.2d at 94.

We conclude the same reasoning applies in the instant case. Here, the Club sought reimbursement for advance worker's compensation payments made to Ankrom during his employment. The Club did not, however, notify the Commission of its credit/offset claim as required by article 8309, section 4(b). Because the Club chose not to use the statutory procedure to pursue its reimbursement claim, we conclude it did not exhaust its

---

**8.** *See* Act of March 6, 1969, 61st Leg., R.S., ch. 18, 1969 Tex.Gen.Laws 48, 53 (repealed).

**9.** *See id.*

**10.** We disagree with the Club's claim that it was not entitled, as an employer, to become involved in the proceedings before the Commission. The cases relied on to support this proposition are inapplicable to the instant suit. *See Mike Hooks, Inc. v. Pena*, 313 F.2d 696 (5th Cir.1963); *Trans-*

*port Ins. Co. v. Jaeger*, 534 S.W.2d 389 (Tex.Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Neither of these cases involved the issue of an employer's right to credit for advance worker's compensation benefits payments and, in fact, the *Pena* decision was decided before the statute was amended to allow the making of such advance payments. Thus, we do not find these decisions controlling.

administrative remedies in this case. Accordingly, we conclude the trial court was without jurisdiction to consider the Club's claim.

Further, we reject the argument that *Pacific Indemnity* is inapplicable to the instant suit because we are dealing with a right conferred on the Club by contract. Paragraph ten of Ankrom's NFL player's contract[11] states:

> WORKMEN'S COMPENSATION. Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workmen's compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workmen's compensation benefits due Player, and [the Club] will be entitled to be reimbursed the amount of such payment out of any award of workmen's compensation.

 Admittedly, the NFL contract gave the Club the right to seek reimbursement for any advance worker's compensation payments made to Ankrom. This provision, however, did nothing more than give effect to the rights already enjoyed by the Club under the worker's compensation statute. We do not believe an employer can avoid the procedural requirements of the worker's compensation statute simply by incorporating a right already conferred by statute into its employment contracts. To do so would be to subvert the intent of the legislature in enacting the statute. Because this so-called "contract right" of reimbursement was nothing more than a reiteration of rights under the statute, we conclude the Club's claim "arose out of" the worker's compensation statute for purposes of article 8307, section 5. Thus, *Pacific Indemnity* is indistinguishable from the instant suit. Under the reasoning of *Pacific Indemnity*, we conclude the Club was required to bring its credit or offset claim in front of the Commission prior to having it heard in the district court and the failure to do so deprived the district court of jurisdiction to hear the matter.[12]

Additionally, we reject the trial court's conclusion that article 8309, section 4(b) was inapplicable because Ankrom did not file his worker's compensation claim until after he left the Club's employ, and he was paid wages during the period for which he sought worker's compensation benefits.[13] In reviewing a trial court's conclusions of law, we look to the court's conclusions to determine their correctness. *See Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 894 (Tex.1991). In this case, we conclude the trial court was incorrect in concluding section 4(b) did not apply for the reasons stated.

11. Ankrom's contract was a standard player contract used by all National Football League teams. The Club did not prepare this contract.

12. We note that, in a number of other jurisdictions where similar arguments have been raised by NFL teams, the decision of whether to provide the teams with a credit or offset under paragraph 10 of the NFL contract was initially resolved by the state's worker's compensation agency. *See* California Workers' Compensation Appeals Board, *Harty v. San Francisco 49ers*, No. SFO 0315399/0349674 (August 8, 1991) (order denying reconsideration); District of Columbia Hearings & Appeals Examiner, *In the Matter of Otis L. Wonsley v. Pro Football, Inc.*, No. 87–811 (hearing held January 22, 1988) (compensation order); Florida Office of Judges of Compensation Claims, *Jarvis v. Tampa Bay Area NFL Football Club, Inc.*, No. 422–94–1569 (October 10, 1994) (order granting Tampa Bay Buccaneers offset of salary payments made through specified date).

13. The trial court's conclusion of law number four states specifically:

> This Court concludes as a matter of law that, since Scott Randall Ankrom did not pursue or prosecute his claim for workers' compensation benefits against Gulf Insurance Company until after his termination as an employee with the Dallas Cowboys Football Club, Ltd., and that since his initial claim for workers' compensation benefits was, for the first time, filed with the Texas Workers' Compensation Commission in August of 1991, that Article 8309, Section 4(b) of the Texas Workers' Compensation Act has no application to the facts of this case. Furthermore, this Court concludes as a matter of law that since Scott Randall Ankrom was paid full wage continuation benefits under his 1989 and 1990 player contracts with the Dallas Cowboys Football Club, Ltd. that Article 8309, Section 4(b) of the Texas Workers' Compensation Act has no application to the facts of this case because the statute requires that the employee receive no wages.

We note that section 4(b) does not expressly state that an employee must file his claim during the time he is actually employed in order for the employer to assert its right to a credit or offset. Nevertheless, the Club contends the first sentence of section 4(b) implies that the claim must be made during the employee's period of employment. The first sentence states that "[i]n the event the [insurance company] does not initiate payments of compensation, the employer may ... voluntarily initiate weekly payments...." We disagree that this statement presupposes that a claim has to be made during an employee's period of employment.

At the time of Ankrom's injury, Gulf did not initiate payments. The fact that Ankrom had not yet filed his worker's compensation claim is, in our view, immaterial. The absence of any payment by Gulf automatically entitled the Club to initiate weekly payments of compensation under section 4(b). Under the express language of paragraph ten, this is precisely what the Club did.[14] We fail to see how the application of section 4(b) is altered by the mere fact that Ankrom was no longer employed with the Club. Further, we note that the Club was not prevented from complying with section 4(b) simply because Ankrom was not employed at the time he filed his claim. At the time Ankrom filed his claim, the Club could have notified the Commission of the date that it initiated payments and the weekly amount thereof. Because we believe the Club's rights under section 4(b) were in no way prejudiced by the fact that Ankrom waited to file his worker's compensation claim, we hold section 4(b) applied in this case. We further hold that the trial court erred in concluding otherwise.

Likewise, we reject the trial court's conclusion that section 4(b) did not apply because Ankrom was paid wages during the time in which he was disabled. It is true that section 4(b) states that "payments previously made by an employer ... *during [a time in] which the employee earned no wages from the employer*, shall be construed as employer compensation under this law." However, we do not believe that Ankrom was in fact being paid wages during the time period in question. Paragraph ten of the NFL contract characterizes any payments made to Ankrom during the time he was entitled to worker's compensation benefits as "advance payments of workmen's compensation benefits." Thus, under the express terms of the contract, Ankrom was not receiving "wages" but instead was receiving "advance worker's compensation payments." The Club cannot have it both ways. It cannot argue, on the one hand, that the payments made to Ankrom during his disability were worker's compensation benefit payments for purposes of its credit or offset claim and, on the other hand, that they were "wages" for purposes of section 4(b). The payments were either one or the other. Because the payments made by the Club are characterized in the contract as advance benefits payments, we conclude Ankrom was paid "benefits payments," not "wages," during the period in question. Because Ankrom received no wages during that time, we conclude section 4(b) applied to the Club's credit or offset claim. The trial court erred in concluding otherwise.

We, therefore, sustain Ankrom's first four points of error. Our disposition of these points of error makes it unnecessary for us to consider points of error five through seven.[15] TEX.R.APP.P. 90(a).

## ATTORNEY'S FEES

 In his final point of error, Ankrom contends the attorney's fees award was improper. We agree. Because we conclude the trial court did not have jurisdiction over the Club's claims, the attorney's fee award based on those same claims is erroneous. We therefore sustain Ankrom's eighth point of error.

Accordingly, we vacate the trial court's judgment and dismiss the Club's claims.

14. Paragraph ten characterizes the payments made to Ankrom during the time he was entitled to benefits as advance payments of worker's compensation benefits.

15. In points of error five through seven, Ankrom generally argues that paragraph ten of the NFL contract violated the Texas Worker's Compensation Act.