Josefina ESCAJEDA, Appellant,

v.

**CIGNA INSURANCE COMPANY OF TEXAS, Appellee.**

No. 07–96–0138–CV.

Court of Appeals of Texas, Amarillo.

Oct. 10, 1996.

Opinion Denying Rehearing Nov. 22, 1996.

Wolfram Law Firm, P.C., Walter P. Wolfram, Sr., Amarillo, for appellant.

Gibson, Ochsner & Adkins, L.L.P., Todd O. Lafferty, Kenneth S. Muncy. Amarillo, for appellee.

Before BOYD and QUINN, JJ., and REYNOLDS, S.J.*

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex.

QUINN, Justice.

Josefina Escajeda appeals from a final summary judgment declaring that she take nothing against Cigna Insurance Company of Texas (Cigna). In her one point of error, she asks whether the trial court erred in granting Cigna summary judgment. We answer yes and no, affirm in part, reverse in part, and remand.

*Background*

The dispute arose from the settlement of a worker's compensation claim of Ms. Escajeda on April 17, 1991 (April Settlement). The agreement, executed by Ms. Escajeda, her attorney and Employers National Insurance Company (Employers), contained a provision obligating Employers to "pay for all reasonable and necessary future hospital and medical expenses, if any, resulting from this injury rendered by or at the direction of Dr. Royce Lewis [or] Gabor Racz during the period ending on 4–12–96 with no exceptions." Cigna later assumed Employers' duties under the agreement.

After the document was executed and at the direction of Dr. Racz, Ms. Escajeda underwent "psychotherapy" treatment performed by Dr. Joseph Ayad. She incurred charges of $3060 related to said treatment between February 2, 1993, to June 29, 1993, and the bill was submitted to Cigna. The latter refused to pay and, instead, filed a "Notice of Controversion of Right to Compensation" with the Texas Worker's Compensation Commission (TWCC) on September 29, 1993. In the document and under the heading "Right to controvert/suspend medical benefits for the following reason(s)," it wrote "[b]ased on the findings of the Retrospective Utilization Review, all psychotherapy treatment has been found to be unreasonable and necessary [sic] after September 1, 1991."

Apparently, Cigna had previously retained Intracorp to review aspects of the medical treatment afforded to Ms. Escajeda. And, after considering various medical records and reports, Intracorp concluded that "NO psy-

Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

chiatric care [was] needed after 9/91" and recommended that "NO payment for psychotherapy per Dr. Joseph Ayad from 2/2/93 to 6/29/93 in the amount of $3060" be made. Furthermore, this information was disclosed by letter dated September 21, 1993, and Cigna used it to underlie the aforementioned "notice of controversion."

Ms. Escajeda did not respond to the notice until July of 1995. Rather, she continued her sessions with Ayad and incurred additional charges. As of April 29, 1994, the balance purportedly due the doctor, after Cigna made partial payment and filed another "Notice of Controversion" on March 18, 1994, approximated $19,350. Cigna again refused payment, which refusal resulted in this lawsuit.

According to Escajeda's live pleading, Cigna delegated, via the April Settlement, the "decision as to what would constitute reasonable and necessary future . . . hospital and medical expenses" exclusively to doctors Lewis and Racz. So long as either doctor directed her treatment in good faith, the insurer was bound to pay, she continued. Furthermore, by taking the stance that it did and denying coverage, Cigna supposedly violated both article 21.21 of the Texas Insurance Code and article 17.46(b)(12) of the Texas Deceptive Trade Practices Act by misrepresenting 1) that the settlement agreement involved or conferred certain rights, remedies, or obligations "in favor of the insurance company" which it did not, 2) that the insurer could independently determine whether the expenses were reasonable and necessary, 3) that the insurer had no duty to abide by the directive of Dr. Racz, 4) that the insurer did not have to establish that Racz acted in bad faith "to be free of his directive," 5) that the insurer was not obligated to pay for reasonable and necessary medical services under the settlement agreement though making statements calculated to "mislead a reasonably prudent person" to believe otherwise, and 6) that the insurer intended to "force [Escajeda] into a compromise and settlement agreement of the compromise settlement whereby it would not have to comply with the terms of the original compromise settlement agreement." So too did Cigna allegedly breach its duty of good faith and fair dealing by unreasonably denying payment when it knew or should have known that it lacked reasonable basis.

Cigna joined issue and later moved for summary judgment. Supplements to the motion were also filed. In sum, the insurer contended that the trial court lacked jurisdiction over the proceeding because 1) Ms. Escajeda failed to exhaust administrative remedies with the TWCC, 2) Ayad failed to exhaust administrative remedies which relieved her of personal liability for payment of his bill, 3) exhaustion was prerequisite to recovering damages under any theory alleged, and 4) it had reasonable basis to deny payment. The trial court granted the motion without specifying the grounds upon which it relied.[1]

### Point of Error

Again, Escajeda asserted that summary judgment was improper and that none of the grounds mentioned in Cigna's motion permitted the court to deny recovery under her claims of breached contract, violation of the Texas Insurance Code and the Texas Deceptive Trade Practices Act, and bad faith/unfair dealing.[2] Since the propriety of the summary judgment depends upon whether any of Cigna's grounds were legitimate, we now consider whether any were.

#### a. No Jurisdiction Due to the Failure to Exhaust Administrative Remedy

■ The Texas Worker's Compensation Act (the Act) vests the authority to award

---

1. Given that the court did not mention any specific ground for its action, we may affirm if any of the grounds proffered by Cigna were legitimate. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995) (holding that when the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted below).

2. A liberal reading of Escajeda's live petition, that is, her fourth amended original petition, fails to uncover a chose-in-action sounding in breached contract. Indeed, her "counts" simply concern violation of article 21.21 of the Insurance Code and good faith and fair dealing. Other sections of the pleadings mention the Texas Deceptive Trade Practice Act, but none allege breached contract. Nevertheless, Cigna conceded during oral argument that the pleading was indeed sufficient to raise the claim.

compensation benefits exclusively in the TWCC, subject, of course, to later judicial review. *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 612 (Tex.1996). This means that the rights and obligations of the parties regarding compensation claims are controlled by that Act. *Smith v. Stephenson,* 641 S.W.2d 900, 902 (Tex.1982). And, where the latter prescribes steps prerequisite to recovery, those steps must be taken as prescribed. *Id.*; *Ankrom v. Dallas Cowboys Football Club, Ltd.,* 900 S.W.2d 75, 77 (Tex. App.—Dallas 1995, writ denied).

Next, at the time of Ms. Escajeda's injury, the Act provided that

[w]henever in any compromise settlement agreement approved by the [TWCC] or in any agreed judgment approved by the court, any dispute arises concerning the payment of medical, hospital, nursing, chiropractic or podiatry services or aids or treatments, or for medicines or prosthetic appliances for the injured employee as provided in Section 7, Article 8306 . . . or as provided in such compromise settlement agreements or agreed judgments, all such disputes concerning the payment . . . *shall be first* presented *by any party* to the Industrial Accident Board within six months from the time such dispute has arisen (except where 'good cause' is shown for any delay) for the board's determination. A dispute arises when a written refusal of payment has been filed with the board. . . . Any final ruling, decision, denial, or award of the board may be appealed *by any party* according to and under the provisions of Section 5 of Article 8307 of this Act.

*Tex.Rev.Civ. Stat. Ann.* art. 8307, § 12b (Vernon Pamph.1996) (historical note) (emphasis added).[3] Moreover, when read in a common sense manner, it obligated either Cigna or Ms. Escajeda, to submit any dispute

regarding payment of medical and hospital expenses to the TWCC for resolution. And, only after the Commission issued a final ruling could they petition the judiciary for relief. *Id.* at sec. 5. In other words, before a state court could acquire jurisdiction over the controversy, it had to be first shown that the TWCC made a final ruling on the matter. *Pacific Indem. Ins. Co. v. Liberty Mut. Ins. Co.,* 834 S.W.2d 91, 92–93 (Tex.App.—Austin 1992, no writ); *Industrial Accident Bd. v. Glenn,* 144 Tex. 378, 190 S.W.2d 805, 807 (1945); *see Castillo v. Allied Insurance Co.,* 537 S.W.2d 486, 487 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) (holding that the provisions of the Act must be complied with or an action is not maintainable in the courts). With this in mind, we now determine whether the trial court had jurisdiction over Ms. Escajeda's various claims.

### 1. Breach of Contract

The April Settlement established Cigna's duties *vis-a-vis* the payment of Escajeda's future medical and hospital benefits related to her on the job injury. Thus, it triggered application of article 8307, § 12b of the Texas Civil Statutes. Moreover, should any party question the other's performance under that agreement, they were obligated to resolve the dispute in the way dictated by the Act, that is, by first submitting it to the TWCC for a final ruling. Until that occurred, no court had jurisdiction over the controversy.

■ Here, the summary judgment evidence revealed that though Cigna may have notified the TWCC of its refusal to pay the Ayad bill and though Escajeda responded to the notification several years later, the Commission has yet to finally rule on the matter. So, the trial court could have lawfully concluded that it had no jurisdiction over the claim of breached contract. Yet, the same is

---

**3.** Though the legislature repealed this statute in 1989, it postponed the effective date of the repeal to January 1, 1991. *General & Special Laws,* 71st Leg. 2nd Sess., Ch. 1, sec. 17.18(a) (1989). So too did it direct that "[t]he change in law made by this Act applies only to an injury for which the date of injury is on or after the effective date of the Act," *id.* sec. 17.18(c), and that the TWCC "shall process claims for injuries occurring before January 1, 1991, in accordance

with the law in effect on the date that the injury occurred, and the former law is continued in effect for this purpose." *Id.* at sec. 17.18(d). Since Ms. Escajeda suffered her job related injury in 1987, section 12b of article 8307 applied to the circumstances at bar. *See General & Special Laws,* 68th Leg. Reg. Sess., Ch. 501 (1983) (noting that art. 8307, sec. 12b became effective in 1983).

not necessarily true with regard to the Insurance Code and Deceptive Trade Practice Act allegations.

## 2. *Insurance Code and Deceptive Trade Violations*

In *Saenz*, the plaintiff sued Fidelity & Guaranty for fraudulently inducing her to settle her compensation claim. *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d at 608. Her prayer for relief included, among other things, damages for future medical costs and mental anguish arising from the fraud. *Id.* The jury subsequently found that the insurer had indeed defrauded the insured and had acted in bad faith. Furthermore, it awarded her $50,000 for past mental anguish, $200,000 for future mental anguish, and $500,000 for future medical costs.

Yet, on appeal, the Supreme Court held that to the extent the award included damages for lost compensation benefits, it was improper. This was so because the power to award such relief was, and is, vested exclusively in the TWCC. *Id.* at 612. It further concluded that permitting "courts to award damages for wrongful deprivation of benefits would circumvent the Commission's jurisdiction." *Id.* at 612. Nevertheless, not all relief was denied Saenz since the court also held that she could pursue damages for fraud and bad faith "as long as [they were] not for lost compensation benefits." *Id.*

We read the foregoing passages to be little more than reaffirmation of prior law. That is, damages constituting recovery of lost compensation benefits must be pursued via the Act regardless of the legal theory through which they are sought. Thus, the injury sought to be recompensed and the purpose of the relief are all important. If the relief serves to recompense the wrong or injury which was originally redressed under the Act (*e.g.*, the head injury in *Saenz*), then the Act controls their recovery. But, if it serves to recompense some wrong independent of the

original injury compensable under the Act (*e.g.*, the injury arising from the fraud or bad faith in *Saenz*), then the Act and its restrictions are inapplicable.

Here, Ms. Escajeda alleged that Cigna uttered various misrepresentations and committed various acts prohibited by article 21.21 of the Texas Insurance Code and section 17.46(a) of the Texas Business and Commerce Code. Though her live pleading was somewhat vague, her appellate brief nevertheless explained the type of damages she sought. They included

a. [l]oss of the [worker's compensation] benefits;
b. [a]utomatic trebling of the first $1,000.00 of the damages under the DTPA;
c. [a]utomatic trebling of all damages under [a]rticle 21.21 . . . if the violation is done knowingly; . . .
e. [a]dditional damages under the DTPA (alternative to but not in addition to automatic trebling under [a]rticle 21.21) [and;]
f. [m]ental anguish for a 'knowing violation' of either the DTPA or [a]rticle 21.21.

Seeing this, we conclude that to the extent she attempts to recover damages related to lost compensation benefits allegedly caused by the misrepresentations or deceptive trade practices, the Act provides the exclusive means of recovery. Thus, the trial court lacked original jurisdiction to address that portion of the controversy relating to lost compensation benefits until the terms of the Act were satisfied. But, to the extent that she tried to recover damages caused by the purported misrepresentations and deceptive conduct and unrelated to lost compensation benefits, the Act was inapplicable. Escajeda did not have to exhaust any administrative remedy, and the trial court had jurisdiction to consider that aspect of her 21.21 and 17.46(a) suit.[4] Finally, though this could result in piecemeal litigation, the Texas Su-

4. Similarly, the contention that Escajeda's "standing" was also contingent upon Ayad presenting his bill to the TWCC, would not prevent her from proceeding with this part of the lawsuit. Assuming its accuracy, the proposition would at most effect only claims encompassed by the worker's compensation statute. Escajeda's is not such as long as she pursues damages which exclude recovery of lost benefits.

preme Court long ago recognized and approved that possibility in a suit such as this. *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949) (involving the rescission of a worker's compensation settlement agreement and relief affordable by the court).

### 3. Bad Faith

■ With regard to the bad faith cause of action, Escajeda sought loss of compensation benefits, damages for past and future mental anguish, and punitive damages. For the reasons previously stated, the court lacked original jurisdiction to entertain the request for compensation benefits, but had jurisdiction over the claim for damages unrelated to lost compensation.

### b. Rejection of Escajeda's Good Faith Fair Dealing Chose on the Merits

Next, Cigna urged the court to also grant summary judgment against its opponent's cause of action involving good faith and fair dealing because it allegedly established, as a matter of law, that it had a reasonable basis to deny payment to Ayad. Though Escajeda disputed this in her appellate brief, she "conceded" the claim at oral argument. Thus, we need not review whether the court properly denied her recovery upon that cause of action.

Yet, in her brief and during oral argument, Escajeda raised other contentions which necessitate comment given that a portion of this cause will be remanded. And, these arguments concern 1) interpretation of that part of the April Settlement involving payment of future expenses, and 2) the concept that a mere disagreement concerning the interpretation of a contract triggers liability under article 21.21 of the Insurance Code and § 17.46(a) of the Business and Commerce Code.

■ Regarding the former, Escajeda asserted that Cigna had designated doctors Lewis and Racz as the sole arbiters of the reasonableness and necessity of all future medical expenses. We disagree since before a contract can be read as delegating to third-parties that power, the words evincing the delegation must be express, plain, clear, and certain. *Lake LBJ Municipal Utility Dist. v. Coulson*, 692 S.W.2d 897, 905–906 (Tex. App.—Austin 1985) *rev'd on other grounds*, 734 S.W.2d 649; *Eckert–Fair Constr. Co. v. Flabiano*, 342 S.W.2d 629, 632 (Tex.Civ. App.—Dallas 1960, writ ref'd n.r.e.). This is so because the grant derogates one's common law right to have contractual disputes resolved by judge or jury. *Id.*

■ Here, the clause stated that Cigna was to pay "all reasonable and necessary future hospital and medical expenses ... resulting from this injury rendered by or at the direction of" Lewis or Racz. Nothing in that passage, or anywhere else in the settlement agreement for that matter, expressly, plainly, clearly, or certainly evinced an intent to grant Lewis or Racz exclusive authority to determine what was or was not reasonable or necessary expense. *Compare, Angelina Cas. Co. v. Bennett*, 415 S.W.2d 271, 273 (Tex.Civ. App.—Houston 1967, no writ) (wherein the settlement agreement read "it being understood as part of the settlement that the Defendant will not contest whether or not said expenses are necessary if certified to by Dr. ... Blum"). Nothing evinced an agreement by Cigna to forego disputing the reasonableness or necessity of the medical treatment prescribed and expense related thereto. In sum, the provision, when plainly read in relation to the entire contract, simply obligated Cigna to pay for those expenses which were incurred under the direction of Lewis or Racz and which were reasonable and necessary.

■ As to the whether mere disagreement concerning the interpretation of a contract provides basis to sue under article 21.21 of the Insurance Code or § 17.46(a) of the Business and Commerce Code, we again conclude that Escajeda was mistaken. That matter has been resolved adversely to her by such cases as *Quitta v. Fossati*, 808 S.W.2d 636 (Tex.App.—Corpus Christi 1991, writ denied) and *Navistar Int'l Transp. Corp. v. Crim Truck & Tractor Co.*, 791 S.W.2d 241 (Tex. App.—Texarkana 1990) *affirmed*, 823 S.W.2d 591 (Tex.1992). Indeed, in affirming the intermediate appellate court decision in *Navistar*, the Texas Supreme Court acknowledged

that no misrepresentations exist, for purposes of the Deceptive Trade Practices Act, where the only supposed misrepresentations are "the terms of the contract themselves." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d at 596. Simply put, if a contract plainly states that one is to receive apples, the recipient cannot claim deceptive trade practice or misrepresentation by merely opting to read the provision as indicating oranges.

Accordingly, we sustain the point of error and reverse the summary judgment and remand the cause for further proceedings solely to the extent that the trial court determined it lacked jurisdiction to entertain the claims under article 21.21 of the Texas Insurance Code and § 17.46(a) of the Business and Commerce Code unrelated to the recovery of worker's compensation benefits. Furthermore, to the extent that the summary judgment purports to deny, on the merits, all relief relating to the causes and damages over which it lacked jurisdiction, we modify the judgment to read that the claims were denied without prejudice; the court could not render a dispositive decree on the merits if it lacked jurisdiction over same. Finally, in all other things, the point of error is overruled and the final summary judgment is affirmed.

## ON MOTION FOR REHEARING

Cigna Insurance Company of Texas (Cigna) moves the court for rehearing on two grounds. Through the first, it cites *Emmert v. Progressive Cty. Mut. Ins. Co.*, 882 S.W.2d 32 (Tex.App.—Tyler 1994, writ denied) as holding that its defense to Josefina Escajeda's bad faith claim also served to defeat each of her other "extracontractual" causes of action (*e.g.*, her deceptive trade practice claim and insurance code claim). We would agree if each cause was nothing more than a recharacterization of the bad faith claim. *See id.* at 36 (holding that the various other extracontractual claims were barred because they had the same "predicate for recovery as [the] bad faith cause[ ] of action"); *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 282 n. 2 (Tex.App.—San Antonio 1992, writ denied) (holding that the deceptive trade claim was defeated since it and the bad faith

allegation were both founded on the "theory ... that State Farm denied the insurance claim[s] without a reasonable basis"). But, when the tortious acts underlying the deceptive trade practices/Insurance Code and bad faith claims differ, *Emmert* does not bar recovery for the former simply because the insurer proved that it had a reasonable basis to deny coverage (and thereby defeat the claim of bad faith). For instance, if one sued an insurer contending that it 1) committed a deceptive act by stating that the cost of the policy was only $100 when in truth it was $300, and 2) denied a claim in bad faith, the insurer's proving that it had a reasonable basis to deny the claim does not prevent the insured from pursuing recovery for the deceptive act of misrepresenting the policy's cost.

Through its second ground, Cigna posits that we should not have remanded the cause in any respect since all extracontractual claims were denied in our original opinion. We disagree for several reasons.

First, the defenses raised by Cigna encompassed nothing more than the exhaustion of administrative remedies and the reasonable basis of its decision to deny coverage. The former was inapplicable to the claims of Escajeda which sought recovery for injury other than lost compensation benefits. The latter was not addressed by us since Escajeda conceded that Cigna was correct. Yet, conceding that the insurer had reasonable basis to deny coverage did not effectively preclude recovery upon all of Escajeda's extracontractual claims. As explained above, those having a predicate or "gist" different than that underlying the bad faith claim were not barred. For instance, Cigna's purportedly tortious act of *misrepresenting* the extent of Dr. Racz' *authority* under the settlement agreement differed from the supposedly tortious act of refusing to pay reasonable and necessary expenses. Though possibly linked in an existential way, the operative facts underlying each were distinct. And, though both may give rise to a deceptive trade practices or insurance code claim, both would not be defeated, as illustrated above, merely because Cigna had reasonable grounds to con-

clude that the expenses were not reasonable and necessary.

Second, neither a trial nor appellate court can approve a summary judgment on grounds which the movant failed to assert. *Gilstrap v. Park Lane Town Home Ass'n,* 885 S.W.2d 589, 591 (Tex.App.—Amarillo 1994, no writ). As previously mentioned, Cigna's original and supplemental motions for summary judgment were based upon exhaustion of remedies and reasonable basis to deny payment. The motions did not address whether Cigna delegated to Racz the sole authority to determine the reasonableness of medical expense or whether the mere disagreement as to the interpretation of a contract provides fodder for an Insurance Code or deceptive trade allegation. Yet, those contentions were presented to this court in Escajeda's appellate brief. Furthermore, they were based upon allegations contained in amendments to her initial pleading. Since Escajeda raised them and because we reversed and remanded that portion of the judgment which involved them, we deemed it judicially economical to consider them. But, because of *Gilstrap* and like precedent, we were prevented from affirming summary judgment based upon them. Thus, not all extracontractual claims were denied in our opinion.

Accordingly, we overrule Cigna's motion for rehearing.