CIGNA INSURANCE COMPANY
OF TEXAS, Appellant,

v.

Steve W. KILLION, Appellee.

No. 07–99–0466–CV.

Court of Appeals of Texas,
Amarillo.

April 24, 2001.

Rehearing Overruled June 6, 2001.

Ben Taylor, Dallas, Gary A. Scarzafava, Houston, for appellant.

Chris M. Cessac, Hurst, for appellee.

Before BOYD, C.J., QUINN and REAVIS, JJ.

QUINN, Justice.

Cigna Insurance Company of Texas (Cigna) appeals from a judgment entered in favor of Steve W. Killion (Killion). Five issues, with various subparts, pend before us. However, the first is dispositive of the appeal. It concerns whether the trial court erred in refusing to have Killion exhaust his administrative remedies before Texas Workers' Compensation Commission (TWCC).[1] We reverse the judgment and remand the cause. .

### Background

The current dispute between Killion and Cigna arose some eight years after the former injured his back while working for ABC Treadco, Inc. in 1986. The TWCC awarded Killion compensation for the 1986 injury. However, in 1994, Killion allegedly suffered further pain and impairment due to the 1986 injury. Thereafter, he requested that Cigna fund the medical services, i.e. back surgery, needed to remedy same. In response to the inquiry, Cigna hired an investigator to briefly investigate Killion, reviewed several of Killion's medical records, and filed a notice of controvention with the TWCC. In short, the carrier determined that the 1994 pain and impairment, if any, were due to an intervening act unrelated to the 1986 work related occurrence.

---

1. Because Killion's injury occurred in 1986, the law in effect at that time governs any claim arising from this injury. *Escajeda v. Cigna Ins. Co.*, 934 S.W.2d 402, 405 (Tex. App.—Amarillo 1996, no writ). Furthermore, that law is found in the pre–1989 revision of the Texas Workers' Compensation Code.

Because Cigna rejected the claim, Killion sued the carrier for the breach of its duty of good faith and fair dealing, violation of articles 21.21 and 21.21–2 of the Texas Insurance Code, and violation of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM.CODE ANN. § 17.50(a)(4) (Vernon 1987). Cigna joined issue and moved the trial court to dismiss or abate the proceeding. The grounds for its motion were twofold. First, it contended that Killion had yet to exhaust his administrative remedies before the TWCC. In other words, that agency allegedly had the exclusive jurisdiction to determine if the remediation sought was truly compensable under the Texas Workers' Compensation Act, TEX. CIV STAT. ANN. Art. 8306 *et seq.* (Vernon 1984) (hereinafter referred to as the Workers' Compensation Act or the Act). And, because it had yet to make that decision, the trial court purportedly lacked jurisdiction to consider the dispute. Alternatively, the insurer asserted that the doctrine of primary jurisdiction barred the trial court from proceeding. Which ground the trial court found persuasive is unknown. However, it did enter an order abating the action.

While the proceeding was abated, the TWCC concluded that Cigna was obligated to pay several rather small medical bills incurred by Killion, which bills the insurer paid. However, the Commission did not address whether the back surgery Killion demanded was needed to ameliorate the 1986 injury or whether it would serve to correct some other, non-compensable injury. Again, Cigna contended that Killion's 1994 condition arose from an independent and non-compensable injury. Nonetheless, the trial court reinstated the lawsuit, refused to grant Cigna's second motion to dismiss or abate, and eventually convened a jury to try Killion's allegations. The jury found that Cigna not only had breached its duty of good faith and fair dealing

but also had violated the Texas Insurance Code and the Texas Deceptive Trade Practices Act. So too did it award Killion damages against the insurer.

### Issue One—Refusal to Abate or Dismiss

Through its first issue, Cigna attacked the trial court's eventual decision to proceed with trial. Both the need for Killion to exhaust his administrative remedies and the doctrine of primary jurisdiction allegedly required the trial court to either dismiss the suit or abate it pending review by the TWCC of his demand for compensation. We agree and sustain the point.

### Authority

*1. Exhaustion of Administrative Remedies*

■ It is beyond dispute that the authority to award workers' compensation benefits lies exclusively with the TWCC. *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 612 (Tex.1996); *Escajeda v. Cigna Ins. Co.,* 934 S.W.2d 402, 404–405 (Tex.App.—Amarillo 1996, no writ); *see* TEX. CIV. STAT. ANN. art. 8307, § 5 (Vernon 1966) (stating that "[a]ll questions arising under this law, if not settled by agreement or the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the Board"). Additionally, that commission must issue a final ruling on questions regarding the availability of compensation benefits under the Workers' Compensation Act before a trial court gains jurisdiction to consider the same topic. *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d at 612; *Escajeda v. Cigna Ins. Co. .,* 934 S.W.2d at 404–405. For this reason, one seeking benefits or compensation purportedly within the scope of the Act must exhaust his administrative

remedies by having the TWCC first determine his entitlement to same.

■ Yet, as previously indicated, the need to exhaust pertains only to attempts to recover benefits or compensation encompassed by the Act. *Escajeda v. Cigna Ins. Co.*, 934 S.W.2d at 406–407. Should the complainant be 1) pursuing a cause of action that arises under a body of law other than the Act and 2) seeking damages which exclude benefits or compensation encompassed within the Act, then there exists no duty to first present the claim to the TWCC. *Id.*

At bar, Killion pursued against Cigna causes of action arising under bodies of law other than the Workers' Compensation Act. Again, those causes of action sounded in a breached duty of good faith and the violation of both the Texas Insurance Code and Deceptive Trade Practices Act. Furthermore, a review of the record suggests that the damages sought were those arising from the purported commission of the common law and statutory torts mentioned in the preceding sentence as opposed to lost compensation or benefits afforded under the Act.[2] So, if one were to look no further, one could conclude that the allegations being tried not only were of the type contemplated in *Escajeda* and *Saenz* but also fell outside the requirement for administrative exhaustion. Yet, we would be wrong to look no further for we cannot ignore the implicit ground upon which Killion based a large segment of his claims.

■ Killion may be correct in arguing that the failure to promptly acknowledge communications regarding workers' compensation claims or to adopt reasonable

standards for promptly investigating such claims (as purportedly mandated by the Texas Insurance code) could in and of themselves cause damage. So too may it be that one could suffer injury from the breach of a carrier's duty to reasonably investigate a workers' compensation claim, irrespective of the claim's legitimacy. Yet, that is not the context in which Killion placed his claims. Rather, the damages he sought were premised upon the conclusion that each of his claims were actually compensable under the Workers' Compensation Act. That this is correct is exemplified not only by his own argument but also by the trial court's jury charge.

As to Killion's arguments, he swayed the trial court to redact the phrase "separate and apart from the injuries caused by his worker's compensation injury" from question five of the court's charge. Through that question the jurors were being asked to determine the sum of money, if any, which would compensate him for his damages. Furthermore, in convincing the court to redact the language, Killion asserted that the law entitled him to "recover damages caused by [the] *delay or refusal to give treatment.*" (Emphasis supplied). Logically, before one can say that damages arose from the delay or refusal to give treatment, he must first conclude that the injured party was entitled to treatment. If this were not so (*i.e.,* if the injured were not entitled to treatment) then there could be no damages arising from the failure to give treatment. In other words, one cannot claim injury from the failure to treat if one was not entitled to treatment in the first place.

2. For instance, it was alleged that Cigna 1) failed to promptly provide a reasonable explanation of the basis for the denial of the claim, 2) refused to conduct a reasonable investigation of the claim before denying it, 3) failed to promptly acknowledge pertinent communica-tions regarding the claims, and 4) neglected to adopt and implement reasonable standards for the prompt investigation of claims. These acts, according to Killion, violated either § 21.21 or § 21.21–2 of the Texas Insurance Code.

Furthermore, in explaining the nature of his case to the jury, Killion posited that the dispute was "simply about this insurance company denying him any further treatment to his back when it was obvious that *it was covered, not reasonably clear, it was obvious.*" (Emphasis added). That passage again illustrates Killion's effort to base his claims on the premise that he was entitled to the back surgery under the Workers' Compensation Act. And, in so grounding the case, one cannot reasonably deny that his recovery was contingent upon the jury finding that the condition was indeed compensable under the Act.

As to the court's charge, the jurors were told via question one that "a party fails to comply with its duty of good faith and fair dealing when it denies a claim or delays payment of a claim when the insurance company knew or should have known that it was reasonably clear that *the claim was covered.*" (Emphasis added). Given that instruction, the jury was implicitly asked to determine whether Killion's claims of workers' compensation were covered or compensable. And, to hold that the duty of good faith was breached, the jury would have to conclude he was entitled to back surgery under the Act. If it was not, then the jury could hardly answer the question in the affirmative and, thereby, find that Cigna knew or should have known that the claims *were covered.* Simply put, an insurer cannot know claims are covered when they are not.

So, from the above recitation and the record before us, we see that both Killion and the court interjected into the case the issue of Killion's statutory right to back surgery. And, as presented in the jury charge at least through question one, Cigna's liability to Killion was contingent upon the jury determining that he was entitled to treatment (*i.e.* back surgery) under the Workers' Compensation Act.

■ This posed a problem, however, because the power to determine whether Killion was entitled to compensation benefits in the form of back surgery lay solely with the TWCC, subject to judicial review. *Saenz v. Fidelity & Guaranty Ins.*, 925 S.W.2d at 612. Moreover, the TWCC had yet to determine if he was so entitled. Until it did, neither the trial court nor the jury could usurp the agency's authority by addressing it, and that is what effectively occurred here. The jury and trial court, through their respective verdict and judgment, held that the Act entitled Killion to back surgery before the TWCC considered the matter. Therefore, we hold that the trial court erred when it failed to heed the dictate of *Saenz* and like authority obligating Killion to first present the matter of his entitlement to back surgery to the TWCC and secure a final decision resolving the issue from that agency. *See Pacific Indem. Ins. Co. v. Liberty Mut. Ins. Co.*, 834 S.W.2d 91, 93 (Tex.App.—Austin 1992, no writ) (holding that the failure to obtain an administrative ruling under the workers' compensation statute prevents the paty from invoking the district court's jurisdiction); *Castillo v. Allied Ins. Co.*, 537 S.W.2d 486, 487 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) (holding that the provisions of the Workers' Compensation Act must be satisfied or the action is not maintainable in the courts).[3]

---

3. We see that our decision also avoids potential dilemma. Assuming *arguendo* that the TWCC did eventually get the opportunity to exercise its exclusive jurisdiction over the debate and assuming that it lawfully held the back surgery non-compensable, then there would arise a fatal conflict with the trial court's judgment. Simply put, the jury and court would have awarded damages based upon the conclusion that the surgery was compensable when the agency held it was not. Furthermore, any award for breached

That Killion may have to first incur the expense of back surgery before the Commission can address the issue, *see* Tex.Rev.Civ. Stat. Ann. art. 8307, § 5 (stating that neither the TWCC nor a court may award any cost or expense for any item not actually furnished to and received by the employee), does not change our decision.[4] It has long been recognized that when the Workers' Compensation Act directs that an action be taken in a certain way, it may be performed in no other manner. *Truck Ins. Exch. v. Seelbach,* 161 Tex. 250, 339 S.W.2d 521, 523 (1960); *Escajeda v. Cigna Ins. Co.,* 934 S.W.2d at 404–405. Simply put, the successive steps in the progress and maturation of a claim are mandatory; therefore they must be followed. And, since those steps were implemented by the legislature, it is before the legislature that changes or additions thereto must be sought. The judiciary lacks the authority to *sua sponte* make those changes.

In sum, we hold that the trial court had jurisdiction to afford Killion relief to the extent that the relief was not dependent upon the adjudication of a matter within the TWCC's exclusive jurisdiction. Yet, it could not directly or indirectly adjudicate those issues within the agency's exclusive jurisdiction. *See Attaya v. Shoukfeh,* 962 S.W.2d 237, 241 (Tex.App.—Amarillo 1998, pet. denied) (holding that a court cannot do indirectly what it cannot do directly). Furthermore, since 1) the issue of Killion's entitlement to back surgery was a topic within the agency's exclusive jurisdiction, 2) a large segment of Killion's recovery (as presented through its pleadings and argument) was dependent upon Killion obtaining a favorable ruling on that issue, and 3) the TWCC had yet to address it, the trial court could not consider it.

Finally, we are unable to determine which of the damages awarded were attributable to injury within the trial court's jurisdiction and which were truly dependent upon the jury finding that Killion was entitled to back surgery under the Act. This circumstance prevents us from holding that the aforementioned error on the part of the trial court was harmless. Thus, our only choice is to reverse the judgment and remand the cause.

good faith and the like would surely be less if the surgery was non-compensable, *assuming arguendo* that a reasonable jury could even find liability if the surgery were truly non-compensable. To avoid this conflict and outcome, it is only logical to allow the agency vested with the exclusive jurisdiction to decide the issue of compensability first.

4. We note however that the restriction contained in art. 8307, § 5 expressly mentions only the power of the TWCC and judiciary to charge a carrier with any "costs or expense" that has yet to be incurred by the employee. It does not, by its own terms, prohibit the TWCC from addressing issues unrelated to an actual award of costs and expenses. This, coupled with that part of the same section granting the TWCC with the power to determine "[a]ll questions arising under this law, if not settled by agreement of the parties ... and within the provisions of this law ...", Tex.Rev.Civ. Stat: Ann. art. 8307, § 5 (Vernon 1967), raises the question of whether the TWCC would have jurisdiction to consider (without Killion first incurring any expense) whether Killion's 1994 condition was part and parcel of the 1986 injury and whether back surgery would come within the carrier's duty to "furnish such medical aid ... as may reasonably be required at the time of the injury *and at any time thereafter ...*" *Id.* at art. 8306, § 7 (emphasis added). Neither litigant cited us any authority answering that query in the negative. Instead, they merely argued that the Commission could not award costs and expenses and from that proposition concluded that Killion could do nothing before the Commission until he incurred the expense of surgery. Nor did our own independent research uncover authority addressing the topic one way or the other. Yet, because that particular question is not before us, we do not address it.

Accordingly, it is ordered that the judgment be reversed and the cause remanded for further proceedings consistent with this opinion.