NO. 07-07-0153-CR
 
IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 29, 2009
______________________________

VIRGLE WATTERSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-413067; HONORABLE JIM BOB DARNELL, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION
          Appellant Virgle Watterson appeals from his jury conviction of aggravated sexual
assault of a child and the resulting sentence of life imprisonment. Through four issues,
appellant argues the trial court erred by admitting evidence of extraneous offenses, wrongs
or bad acts, and by denying a mistrial and that the evidence presented at trial is insufficient
to sustain his conviction. We affirm the judgment of the trial court.
 
Background
          By a June 2006 indictment, appellant was charged with aggravated sexual assault,



specifically “intentionally and knowingly caus[ing] the sexual organ of [a child] who was
then and there younger than 14 years of age, and not the spouse of the said defendant,
to contact the mouth of the said defendant.” 
          The victim of appellant’s assault was a five-year-old boy, the grandson of appellant’s
wife. The boy called appellant “Paw Paw.”


 Appellant and his wife lived only a short
distance from the boy and his mother and stepfather. Evidence showed the boy made an
outcry statement to his mother after he came home from spending the night with his
grandmother and appellant. His mother said he seemed upset, and finally told her that
Paw Paw was going to Hell. She tried to dissuade the boy from that idea, but he persisted. 
When she asked why, the boy said, “Because he licked my pee-pee.” She called her
husband into the room, and told him of the boy’s statement. He talked with the boy, and
heard the same thing.


 They called the boy’s grandmother, appellant’s wife, to their home. 
The boy made the same statement to his grandmother. The boy indicated the events
happened in appellant’s pickup.
 
          Appellant’s wife went back to her home and returned with appellant. In conversation
with his wife and the boy’s stepfather, appellant denied the accusation. During that
conversation, he made the statement, “Fine, I did it. I did it just like I did it to Andrea.” The
family called authorities. A Lubbock County sheriff’s deputy responded, took information
from the boy’s mother and determined that the boy was not in further danger.
           A few days later, a sheriff’s department investigator accompanied the boy and his
mother to the Children’s Advocacy Center for an interview. He observed the interview, and
testified the boy’s statement to the interviewer was consistent with the boy’s mother’s
statement to the investigator about the offense.
          When the investigator returned to his office, he found that appellant had left phone
messages to the effect that “he needed to talk to [the investigator.] He needed help.” The
investigator returned appellant’s calls, and made an appointment with appellant, who came
to the sheriff’s office that day. He signed and swore to a typewritten statement the
investigator prepared during their conversation.


 The statement contained this account of
the events that occurred in appellant’s pickup as he drove the boy to appellant’s home to
spend the night: 
“I put [the boy] on my lap and was letting him steer the truck. . . . [The
boy] stopped steering and grabbed his penis. I told him to quit[e] grabbing
that thing or Paw Paw was going to bite it off. He grabbed it one more time.
I took [the boy] off my lap and set him in the middle of the bench seat beside
me. I pulled his shorts down. I pulled his underwear down with his shorts. 
I bent over and put my mouth on his penis. Then I thought to myself, ‘Oh my
god, what am I doing.’ I raised up and apologized to [the boy.] I told him Paw
Paw was sorry. I told him that this is what bad people do, not Paw Paw. I
told him that Paw Paw was going to go to Hell.” 
 
“I went ahead and drove the rest of the way home. We were just a few
hundred feet from home, so it didn’t take long. I would never hurt my
grandson. I love my grandson very much. It only happened for a second or
so. But long enough and it never should have happened. I need help. The
bourbon I had drank and the demons I have been fighting. All of this is what
caused it to happen.” 
 
          Appellant testified at trial. He there maintained the incident was an accident during
horseplay between him and the boy. He testified he moved the boy to the middle of the
pickup’s bench seat next to him and “raised up his shirt” and “went down to blow on his
belly” but the boy “pushed away” from appellant, laughing. When that happened, appellant
said, his chin may accidentally have come into contact with the boy’s penis. He said the
boy’s shorts and underwear had “come down” when the boy moved across the vehicle’s
seat. Appellant admitted he had told differing versions of the events. He testified also that
the emotions reflected in his written statement were a result of his fear because “they’re
trying to throw me in prison.” By the conclusion of his testimony, appellant had claimed
that the sheriff’s department investigator, the boy’s mother and stepfather, and the
Children’s Advocacy Center interviewer all were lying, and that the boy was coerced into
telling the interviewer that appellant “licked his pee-pee.” 
          The jury found appellant guilty as charged in the indictment and assessed
punishment at imprisonment for life. Appellant was sentenced accordingly and this appeal
followed.
 
Analysis
Admission of Evidence of Extraneous Offenses
          The opening paragraph of the narrative in the written statement appellant signed in
the sheriff’s office read as follows:
When I was about seven years old, I walked in on my mother having
sex with my father’s best friend while she was still married to my father. 
Then when I got to my early teens, I was raped in the bathroom shower at
my school by another boy. Then when I turned 17, my father took me to a
whore house, but they turned me down because I was too young. That’s
when my father took me to my mother and my dad talked her into having sex
with me. She never did anything to stop it. I told Investigator Stevens this
to explain what happened with my grandson . . . .
 
          When the State offered the statement into evidence, appellant objected to
admission of that opening paragraph under Rules of Evidence 401, 402, 403 and 404(b). 
The trial court overruled his objections. In his first two issues, appellant contends
admission of the paragraph was error because it had no relevance apart from
impermissible character conformity, and because its prejudicial nature substantially
outweighed any possible probative value. We disagree, and overrule the points of error. 
          Under Rule 401, evidence is relevant if it makes the existence of a fact that is of
consequence to the determination of the action more probable than it would be without the
evidence. Tex. R. Evid. 401; Moses v. State, 105 S.W.3d 622, 625 (Tex.Crim.App. 2003). 
Under Rule 402, there is a presumption of admissibility of relevant evidence. Tex. R. Evid.
402; Moses, 105 S.W.3d at 625. Under Rule 404(b), evidence of other crimes, wrongs,
or acts is inadmissible to prove a person’s character for the purpose of showing action in
conformity therewith. Tex. R. Evid. 404(b); Montgomery v. State, 810 S.W.2d 372, 387-88
(Tex.Crim.App. 1991) (op. on reh’g). See also Casey v. State, 215 S.W.3d 870, 879
(Tex.Crim.App. 2007), citing Johnston v. State, 145 S.W.3d 215, 220 (Tex.Crim.App.
2004). One proper purpose under Rule 404(b) for admission of relevant extraneous
conduct evidence is to rebut a defensive theory. Powell v. State, 63 S.W.3d 435, 438
(Tex.Crim.App. 2001); Ransom v. State, 920 S.W.2d 288, 301 (Tex.Crim.App. 1994) (op.
on reh’g). The trial court’s decision whether to admit evidence under Rule 404(b) will be
upheld on appeal absent an abuse of discretion. Montgomery, 810 S.W.2d at 391. Thus,
we will not intercede as long as the trial court's ruling was at least within the zone of
reasonable disagreement. Id. 
          Extraneous offense evidence is admissible if it rebuts a defensive theory by
showing, for example, absence of mistake or accident. Montgomery, 810 S.W.2d at 387-88. The contention that his contact with the boy’s penis was accidental was a central part
of appellant’s defense. During counsel’s opening statement he told the jury he expected
the evidence to show that appellant did not intentionally or knowingly contact the boy’s
penis. Likewise, appellant testified that any contact he had with the penis was accidental. 
He told the jury at one point, “[m]y chin may have touched it . . . maybe with my chin. But
it was an accident. I did not lick it.” This theory was re-urged in counsel’s closing
argument. The trial court reasonably could have determined that the contents of the
objected-to paragraph of appellant’s written statement had relevance beyond mere
character conformity. Evidence that appellant had been subjected to unusual sexual
events in his youth and that he related those events to the alleged sexual assault of the
victim here tends to rebut a contention that any contact with the child’s penis was simply
an accident.


 
          Appellant relies on Kirby v. State, 208 S.W.3d 568 (Tex.App.–Austin 2006, no pet.)
to support his position that the extraneous conduct evidence admitted at trial was error.
There, the court held that appellant’s history as the victim of sexual abuse was improper
character evidence under Rule 404(b). Id. at 572. In Kirby, the State elicited testimony
from a detective regarding the defendant’s history of sexual abuse for the purpose of
showing that because appellant was a victim of past sexual abuse, she was more likely to
have committed the offense charged. Id. 
          Two factors distinguish the case at bar from Kirby. Unlike the evidence in that case,
here the evidence was provided through appellant’s own statements made in the course
of his admittedly voluntary written statement to a law enforcement officer. And,
significantly, the court in Kirby noted that the State did not make the argument we have
accepted, that the evidence was relevant to rebut a defensive issue. Kirby, 208 S.W.3d
at 573 n.6. Kirby does not assist appellant. 
          Appellant also advanced an objection to the evidence under Rule 403, which
provides that relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. We apply the abuse of
discretion standard when analyzing the trial court’s decision to admit evidence over a Rule
403 objection. Montgomery, 810 S.W.2d at 391. A trial court must balance (1) the inherent
probative force of the proffered item of evidence along with (2) the proponent's need for
that evidence against (3) any tendency of the evidence to suggest decision on an improper
basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues,
(5) any tendency of the evidence to be given undue weight by a jury that has not been
equipped to evaluate the probative force of the evidence, and (6) the likelihood that
presentation of the evidence will consume an inordinate amount of time or repeat evidence
already admitted. Casey v. State, 215 S.W.3d 870, 880 (Tex.Crim.App. 2007); Wheeler
v. State, 67 S.W.3d 879, 888 (Tex.Crim.App. 2002). 
          Rule 403 did not require exclusion of the challenged paragraph of appellant’s
statement. In the context of appellant’s statement to the investigator, we find the contents
of the paragraph strongly probative of the fact his improper contact with the child was a
conscious and knowing act and not an “accident.” Of the three events mentioned in the
paragraph, only the last, involving appellant’s sexual contact with his mother, carried any
great risk of distracting the jury from the issues being tried. The evidence took no
additional time to develop initially, and was mentioned again during the trial only when
appellant took the stand and denied making some of the statements the investigator
recorded.


 Although it does not appear the State had great need for admission of the
challenged paragraph, considering all of the factors, we find no abuse of discretion in the
trial court’s overruling of appellant’s Rule 403 objection. The trial court instructed the jury
concerning the limited purposes for which extraneous offense evidence was admitted. 
          We overrule appellant’s first two issues on appeal.
Denial of Mistrial
          In appellant’s third issue, he contends the trial court erred when it denied his 
request for a mistrial. As noted, during a confrontational conversation among appellant,
his wife and the boy’s stepfather, appellant made the statement, “Fine, I did it. I did it just
like I did it to Andrea.” The statement was revealed to the jury during the State’s
examination of the boy’s stepfather, in his answer to a question asking about appellant’s
response to the boy’s outcry statement. The testimony indicates appellant made the
statement in response to an angry question from his wife, and the witness said appellant
made the statement “flippantly [and] offhandedly.” The witness later agreed the statement
was made sarcastically. The trial court sustained appellant’s objection to the statement 
and instructed the jury to disregard it, but denied appellant’s request for a mistrial. 
          We review a trial court's denial of a mistrial under an abuse of discretion standard. 
Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). See also Archie v. State, 221
S.W.3d 695, 699-700 (Tex.Crim.App. 2007). Mistrial is a device used to halt trial
proceedings when the error is so prejudicial that expenditure of further time and expense
would be wasteful and futile. Ladd, 3 S.W.3d at 567. To determine whether a given error
necessitates a mistrial, we must examine the particular facts of the case. Id. A mistrial is
only required when the impropriety is clearly calculated to inflame the minds of the jury and
is of such a character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jury. Hinojosa v. State, 4 S.W.3d 240, 253 (Tex.Crim.App.
1999). See also Hawkins v. State, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004) (only in
extreme circumstances, where the prejudice is incurable, will a mistrial be required). 
          When the trial court instructs a jury to disregard, we presume the jury follows the
trial court’s instructions. Waldo v. State, 746 S.W.2d 750, 753 (Tex.Crim.App. 1988). See
also Drake v. State, 123 S.W.3d 596, 604 (Tex.App.–Houson [14th Dist.] 2003, pet. ref’d),
citing Ladd, 3 S.W.3d at 567 as quoting Gardner v. State, 730 S.W.2d 675, 696
(Tex.Crim.App. 1987) (en banc). In determining the efficacy of curative instructions, we
may consider the following factors: (1) the nature of the error; (2) the persistence of the
prosecution in committing the error; (3) the flagrancy of the violation; (4) the particular
instruction given; (5) the weight of incriminating evidence; and (6) the harm to the accused
as measured by severity of the sentence. Waldo, 746 S.W.2d at 754. 
          The statement of which appellant complains here was vague and not solicited by
the State. Testimony was clear that the statement was made sarcastically or, as the
witness said, “flippantly.” The context in which the statement was made should have been
clear to the jury. The State did not dwell on the statement, and the incident involving
“Andrea” was not mentioned again during the guilt-innocence phase of trial. The court did
not abuse its discretion by denying the mistrial. 
                     We overrule appellant’s third issue on appeal.
Factual Sufficiency of Evidence
          In appellant’s last issue, he requests that we review the record to insure that the
evidence appellant intentionally and knowingly caused his mouth to contact the boy’s penis
meets the standard of factual sufficiency. We have done so, and overrule the point of
error.  Appellant’s written statement to the sheriff’s office investigator admitted to contact
between his mouth and the boy’s penis, under circumstances by which the jury could infer
that the contact was intentional or knowing. The boy’s statements to his mother, his
stepfather, his grandmother and the interviewer certainly reflect intentional or knowing
contact. The jury viewed the video of the boy’s interview.
          During his trial testimony, the boy, then six years old, frequently was non-responsive. When asked about what happened the night he went to spend the night with
Paw Paw, he stated, “I don’t remember that, too.” He also repeatedly stated “I don’t know”
when asked about the events of that day and his interview at the Children’s Advocacy
Center. The boy acknowledged he did not want Paw Paw to get into trouble. When the
prosecutor asked, “what did [Paw Paw] do to your pee-pee?”, the boy responded “A long
time ago.” On further questioning, he acknowledged that appellant pulled his pants down. 
He denied that appellant touched or licked his “pee-pee,” but agreed that whatever
happened scared him and made him nervous. He also acknowledged that he told his
mother about it and told her “[t]he truth.” He stated on the stand, however, that he did not
“know” that or “remember it.” 
          The jury was free to reject appellant’s witness-stand explanation of the events and
his contention other witnesses were lying, and believe instead that appellant told the truth
to the investigator. The jury also reasonably could have believed the boy told the
interviewer the truth despite his initial reluctance to discuss the events, and reasonably
could have found the boy’s repeated and consistent descriptions of appellant’s actions,
given shortly after the events, more believable than his testimony at trial. The evidence
supporting appellant’s conviction was not “too weak” to support the jury’s verdict nor,
considering the contrary evidence, was the verdict against the great weight and
preponderance of the evidence. See Laster v. State, 275 S.W.3d 512, 518 (Tex.Crim.App.
2009); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006) (both setting forth
the standard for factual sufficiency). 
          Accordingly, we overrule appellant’s last point of error and affirm the trial court’s
judgment.
                                                                          James T. Campbell

                                                                                     Justice



Do not publish.




o-bidi-font-family:"Times New Roman";}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:11.0pt;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("07-08-0279.cv%20opinion%202_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-08-0279.cv%20opinion%202_files/header.htm") fcs;
 mso-endnote-separator:url("07-08-0279.cv%20opinion%202_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-08-0279.cv%20opinion%202_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:.9in 1.0in .7in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-title-page:yes;
 mso-footer:url("07-08-0279.cv%20opinion%202_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:.9in 1.0in .7in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("07-08-0279.cv%20opinion%202_files/header.htm") f2;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->








NO. 07-08-0279-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

MARCH 25, 2010

______________________________

 

TEXAS MUTUAL INSURANCE COMPANY, 

 

                                                                                                            Appellant

 

v.

 

GOETZ INSURORS, INC. AND
GOETZ INSURORS, INC., 

AS
ASSIGNEE OF THE CLAIMS OF CATTLCO, INC., 

 

                                                                                                            Appellee

_______________________________

 

FROM THE 64TH DISTRICT
COURT OF SWISHER COUNTY;

 

NO. A-10810-05-11; HON. ROBERT W.
KINKAID, JR., PRESIDING

_______________________________

 

Opinion

_______________________________

 

Before
QUINN, C.J., and HANCOCK and PIRTLE, JJ.

            Texas Mutual Insurance Company
(Texas Mutual) appeals from a final judgment wherein it claims that the trial
court erred in awarding attorneys fees and prejudgment interest on attorneys
fees to Goetz Insurors, Inc. and Goetz Insurors, Inc., as assignee of the
claims of Cattlco, Inc. (Goetz).  We
reverse in part.

Background

            The story before us is a long one
that started about seven years ago.  It
involves a feedlot, Cattlco, Inc., Stanley (a Cattlco employee), and Goetz (entities
in the business of providing insurance to Cattlco).  It begins with Goetz attempting to find
workers compensation insurance for Cattlco. 
The latters current policy was expiring and another was needed by December
31, 2002.  Texas Mutual was contacted via
an initial application for insurance sent on December 20, 2002.  Per correspondence from Texas Mutual, an
amended application was sent on December 30, 2002.  Accompanying it was a deposit for the
requisite insurance.  Both items were
received and the monies were deposited by Texas Mutual long before January 22,
2003.  The latter date is of import for
that is when Stanley broke his leg while on the job.  Nevertheless, Texas Mutual denied coverage,
contending that the policy had not been effective on that date.  Rather, it purportedly became effective on
February 1, 2003.  

            While Cattlco, Goetz, and Texas
Mutual quarreled over the policys effective date, Stanleys medical needs necessitated
redress.  So, Cattlco and Goetz paid for
his care and settled any claims he may have had not only against Cattlco but
also Texas Mutual.  Cattlco then assigned
its claims against Texas Mutual for breach of contract and the like to
Goetz.  This lead to Goetz suing Texas
Mutual in a Travis County district court for, among other things, breach of
contract.[1]

            No one denied that the central issue
in dispute involved the effective date of the policy.  Yet, Texas Mutual argued that the subject was
related to issues of compensability and implicated the Texas Workers
Compensation Act.  And, because it
purportedly did, the Texas Workers Compensation Commission purportedly had
exclusive jurisdiction over it.  Moreover,
it convinced our sister court in Austin to accept the proposition.  See In
re Texas Mutual Ins., 157 S.W.3d 75 (Tex. App.Austin 2004, orig. proceeding).  As a result of that courts decision, Goetz
was obligated to submit the dispute for resolution by the TWCC.  Though various departments within that entity
disagreed, the Commission finally decided in favor of Texas Mutual.  Believing that to be the wrong answer, Goetz
initiated another suit in a Swisher County district court to test the rulings
accuracy.  

            The original petition filed by Goetz
included complaints about various findings of the Commission, a cause of action
sounding in breached contract for the failure to abide by the agreement with
Cattlco, and requests for damages and attorneys fees.  Trial was convened, and the trial court
afforded a jury opportunity to resolve the controversy.  Moreover, that jury was asked if Texas Mutual
had entered into a contract to provide workers compensation insurance
coverage for Cattlco . . . to be effective on or before January 22, 2003 . . .
.  It answered yes.  It was also asked if Cattlco or its assignee
Goetz was entitled to reimbursement of indemnity and medical payments for
Texas Mutual . . . that resulted from such failure to comply with the contract
to provide workers compensation insurance. [2]
 The jury answered yes to
that question as well.  When asked about
the amount of damages that would fairly and reasonably compensate Goetz . . .
for damages . . . that resulted from the failure of Texas Mutual . . . to
comply with the contract . . ., the jury found approximately $39,500 to be the
appropriate sum.  Then, it found that a
reasonable attorneys fee for the legal services provided Goetz would be
$109,971 for the preparation and trial of the matter outside the environs of
the Commission, $25,810 for the services rendered in prosecuting the matter
within the Commission, and $35,000 if various appellate steps were taken.

            After the trial court entered
judgment upon the jurys verdict, Texas Mutual appealed.  It did not contest the findings that it had
entered into the contract and was obligated to pay damages due to its breach of
the agreement.  Rather, it merely
attacked the attorneys fees awarded Goetz, contending, among other things, that
the suit was not actually one for breach of contract but rather for judicial
review of an administrative decision. 
Though this position seems somewhat inconsistent with the questions
submitted to the jury and about which Texas Mutual did not complain, we conclude
that the trial court lacked jurisdiction to award fees at this time.  

Law

            In Texas, attorney's fees may not be
recovered from an opposing party unless such recovery is provided for by
statute or by contract between the parties. 
Travelers Indem. Co. of Connecticut v. Mayfield, 923 S.W.2d 590,
593 (Tex. 1996).  The authorization of
attorney's fees in civil cases may not be inferred; rather it "must be
provided for by the express terms of the statute in question."  Id. (citing First City Bank Farmers Branch
v. Guex, 677 S.W.2d 25, 30 (Tex. 1984)). 


             Next, the "Workers' Compensation Act
vests the power to award compensation benefits solely in the Workers'
Compensation Commission[], subject to judicial review."  American Motorists Ins. Co. v. Fodge,
63 S.W.3d 801, 803 (Tex. 2001) (citing
Saenz v. Fidelity & Guaranty Insurance Underwriters, 925 S.W.2d 607,
612 (Tex.1996)). Furthermore, judicial review is "limited to issues
decided by the commissions appeals panel and on which judicial review is
sought."  Tex. Labor Code Ann. § 410.302 (Vernon 2006); see Krueger
v. Atascosa County, 155 S.W.3d 614, 619-20 (Tex. App. San Antonio 2004, no pet.) (holding
that claimant could not assert the Downs
waiver contention in trial court, having not raised issue before appeals
panel).  And, the issues decided by the
appeals panel which may be reviewed are those addressed in the contested-case
hearing, as developed by the record of that hearing.  Tex.
Labor Code Ann. § 410.203.  It is
this procedural mechanism that we find ultimately controlling here.

            As alluded to above, we are not
writing on a clean slate.  The Austin Court
of Appeals previously determined that the substance of Goetz claim for
breached contract (i.e. whether the
workers compensation policy was effective on the date of Stanleys injury) was
within the exclusive control of the TWCC. 
In re Texas Mutual Ins., 157
S.W.3d at 82.  Thus, we must follow that
lead.  See Justice Bail Bonds v. Samaneigo, 68 S.W.3d 811, 813 (Tex. App.El Paso 2001, pet. denied) (discussing
the theory of law of the case).  What
this means then is that only those disputes tied to the matter of
compensability and which were addressed by the Commission could be judicially
reviewed by the trial court here. 
Whether the matter of attorneys fees was one such topic is what we now
address.

            No one disputes that the facts and
circumstances underlying Goetz suit in Swisher County are those originally
presented to the Commission per the directive of the Austin Court of
Appeals.  Goetz simply plugged them into
the framework of a common law claim for breached contract.  And, because they evinced a breached
contract, it purportedly was able to use that moniker to secure attorneys fees
under §38.001 of the Texas Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann.
§38.001 (Vernon 2008) (providing for the recovery of attorneys fees in causes
of action sounding in breached contract). 
Yet, a like argument was proffered and rejected by our sister court in Bestor v. Service Lloyds Ins. Co., 276
S.W.3d 549 (Tex. App.Waco
2008, no pet.).  There, the claimant alleged
that the insurers refusal to pay compensation benefits was tantamount to a
breach of contract.  Therefore, he sued
Service Lloyds under that common law theory to recover the administrative
attorneys fees incurred while prosecuting his claim before the TWCC.  Despite finding logical basis to Bestors
legal theory, the appellate panel nonetheless concluded that logic had to
yield to the requirement that he have exhausted his claim
administratively.  Id. at 552.  In other words,
the question of whether he could recover his attorneys fees fell within the
Commissions exclusive jurisdiction.  This was so because the demand for attorneys
fees was based on Service Lloyds dispute of Bestors entitlement to workers
compensation benefits.  Id. at 553.  It did not matter if the claim implicated contract
or tort principles causes of action; whether the Commission had exclusive
jurisdiction over it depended upon whether the claim was based on an alleged
delay or denial of workers compensation benefits.  Id.;
accord, Cigna Ins. Co. v. Killion, 50
S.W.3d 17, 20 (Tex. App.Amarillo
2001, pet. denied) (wherein we held that a claim is within the Commissions
exclusive jurisdiction unless it arises under a body of law other than the
Workers Compensation Act and involves damages which exclude compensation and
benefits encompassed by the Act); see
Cunningham Lindsey Claims Mgmt., Inc. v.
Snyder, 291 S.W.3d 472, 477 (Tex. App. Houston [14th Dist.] 2009, pet. filed) (holding that
unless a claim for relief is not dependent, either directly or indirectly, upon
the resolution of a matter within the Commissions exclusive jurisdiction, a
trial court may not proceed and entertain it). 


            Much like the attorneys fees
incurred in Bestor, those sought and
awarded at bar were incurred in effort to resolve the legitimacy of Texas
Mutuals refusal to pay workers compensation benefits.  That such a refusal may also be a common law
breach of contract, as found by the jury here matters not.  The Commission had and has exclusive
jurisdiction over it, and Goetz must first present it to that body for
administrative determination.

            Accordingly, we reverse that portion
of the trial courts judgment awarding Goetz attorneys fees and prejudgment
interest on attorneys fees and affirm the remainder.  

 

Brian Quinn

                                                                                    Chief
Justice

 

 

 

 

 








            

 











[1]Other causes of action were also
alleged, but they are not pertinent to this appeal. 





[2]Apparently, all recognized that Texas Mutual failed to
perform the contract for a question inquiring about that was not posed to the
jury.  Nor did Texas Mutual complain
about the omission on appeal.